MATTER OF GORDON

In Section 212(c) Proceedings

A-31446671

*Decided by Board June 6, 1980*

(1) In its elementary form, an application for a section 212(c) waiver concerns a present application for readmission to the United States following a temporary absence or an advance waiver in contemplation of a future absence.

(2) Although it was an accepted principle that an alien might obtain a section 212(c) waiver in the course of deportation proceedings with retroactive effect to cure a past illegal reentry, the benefit is now held to be available in a deportation proceeding to nullify deportability due to a criminal conviction in the case of an alien who had the requisite period of lawful permanent domicile even if there has not been a reentry. *Matter of Granados*, 16 I&N Dec. 726 (BIA 1979), reaffirmed.

(3) Where the Service invited an application for a section 212(c) waiver, not as part of a deportation or an exclusion proceeding, and not in contemplation of the alien's departure from the United States and return (*i.e.*, "in a vacuum"), the procedure is held to be unfair and unreasonable inasmuch as the letter of invitation threatened deportation proceedings within 30 days, and the applicant was not made aware of her burden of proof.

(4) Where an unfair procedure induced the filing of a section 212(c) application "in a vacuum," the resulting adverse discretionary determination by the District Director is set aside, and proceedings terminated.

ON BEHALF OF APPLICANT:
Joseph M. Tapper, Esquire
410 Asylum Street, Room 424
Hartford, Connecticut 06103

ON BEHALF OF SERVICE:
Jim Tom Haynes
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Maguire, and Farb, Board Members. Concurring Opinion, Appleman, Board Member

The applicant has appealed from a decision of the District Director, dated August 16, 1979, denying her application for advance permission to return to an unrelinquished domicile pursuant to section 212(c) of the Immigration and Nationality Act, 8 U.S.C. 1182(c). She contends that a letter of instruction from the District Director, received just after her conviction, improperly induced her to file the application prematurely, to her detriment. The order of the District Director will

be set aside, and the proceedings will be terminated.

The applicant is a 22-year-old native and citizen of the United Kingdom who was admitted to the United States as a lawful permanent resident on June 27, 1971. The record indicates that she has not departed from the United States since that entry.

On August 25, 1978, the applicant was convicted of obtaining property by false pretenses and sentenced to jail for a period of 1 year. After 4 months of that sentence had been served, it was suspended and she was placed on probation for a period of 2 years. On October 18, 1978, she was convicted of conspiracy, criminal impersonation, forgery, and larceny. This time she was sentenced to 60 days in jail for each offense, the sentences to be served concurrently.

As a result of these convictions, the District Director decided that the applicant might be deportable under section 241 of the Act, 8 U.S.C. 1251. Instead of starting deportation proceedings against her, however, he sent the following letter to her:

> It has been determined you may be deportable under section 241 of the Immigration and Nationality Act because you were convicted of a violation or violations of law.
>
> Recent court decisions and subsequent changes in Service policy now allow you to apply for advance permission to return to an unrelinquished domicile in the United States. An application is enclosed for that purpose, the fee for which is $50.00.
>
> Please read and follow carefully the instructions on the reverse of the form. Your application can be adjudicated even though you haven't actually departed from the United States. Your application will be reviewed and if you are found eligible for the waiver, no further action will be taken in your case.
>
> The application must be filed within thirty days of receipt of this letter.

In response to the District Director's letter, the applicant, not then represented, filed the subject application for a waiver of excludability under section 212(c) of the Act on April 11, 1979.

The District Director denied the application, however, because of the applicant's criminal record and the absence of any showing of rehabilitation. The District Director also noted that the applicant had not submitted supporting documentation to persuade him to exercise his discretionary authority favorably.

On appeal, the applicant contends that the District Director should not have invited an application for a waiver under section 212(c) in advance of deportation or exclusion proceedings in the circumstances of this case. She argues, therefore, that the District Director's adverse decision should be set aside. We agree.

Section 212(c) provides that aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of 7 consecutive years, may be admitted in the discretion of the Attorney General without regard to certain specified grounds for exclusion of section 212.

390

In its elementary form, an application for a section 212(c) waiver concerns a present application for readmission to the United States following a temporary absence. An alien may also seek an advance waiver, in contemplation of a future absence. The first type is essentially forced, since the alternative if the application is not granted will be exclusion; the second is essentially voluntary.

Recently, a new dimension to the section 212(c) waiver was added. Although it had been an accepted principle that an alien might obtain the waiver in the course of deportation proceedings with retroactive effect to cure a past illegal reentry, the benefit was now held to be available in a deportation proceeding to nullify deportability due to a criminal conviction in the case of an alien who had the requisite period of lawful permanent domicile even if there had not been a reentry. *Francis v. INS*, 532 F.2d 268 (2 Cir. 1976); *Matter of Granados*, 16 I&N Dec. 726 (BIA 1979). As in exclusion, the application in these circumstances is essentially forced.

As an outgrowth of the *Francis-type* section 212(c) application, the Service appears to have engaged in a program to encourage resident aliens with criminal records which render them technically deportable, while not under deportation proceedings, to file applications for section 212(c) waivers by means of the formal procedure referred to above as an application for "advance" waiver. Such an application is essentially voluntary on its face.

In the present case, the letter that the District Director sent to the applicant declares that she may be deportable because of her criminal record, that nonetheless she may be able to obtain relief from deportation, and that she must apply for the relief within 30 days. This last statement strongly implies that deportation proceedings will follow if the suggested form of relief is not sought and that the applicant will only have one chance to apply for it. Moreover, since the Service official who examined her immigration file solicited a 212(c) application instead of instituting deportation proceedings, it is likely that the applicant did not realize that she would have to satisfy him that she deserved the waiver. Indeed, she did not submit any supporting documentation with her application. Consequently, the 212(c) waiver application was decided on the basis of an undeveloped record, and the applicant was left with a formal determination in her file that she had applied for such relief and had been unable to establish that she deserved it.

We find that this procedure is unfair and unreasonable. In *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978), we noted, at 588:

Confined aliens and those who have recently committed criminal acts will have a more difficult task in showing that discretionary relief should be exercised in their behalf than aliens who have committed the same offenses in the more distant past.

Common sense and prudence suggest that a recently convicted alien should prefer to let a considerable time elapse before offering to demonstrate rehabilitation.

The application herein was filed improvidently. Its filing was induced unfairly. The applicant desires not to have added to her future burdens the record of this discretionary determination that she is undeserving. Her request is reasonable. We will set aside the denial order.

ORDER: The decision of the District Director is set aside, and the proceedings are terminated.

CONCURRING OPINION: Irving A. Appleman, Board Member

I concur in the decision of the majority, but believe the majority statement that the Service "procedure is unfair and unreasonable" needs elaboration.

This case involves an "in a vacuum" application under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. 1182(c). The application was made neither as part of a deportation or exclusion proceeding, nor in advance of a departure from the United States in order to facilitate a return as a matter of convenience. *Matter of Wolf,* 12 I&N Dec. 736 (BIA 1968). It was made by a lawful permanent resident of the United States. The logical question presents itself—why was it made at all? So far as the record before us is concerned, the applicant has no need for "relief" at this time. If, as, and when an Order to Show Cause in deportation proceedings issues, and she becomes the subject of a proper adjudication, in the manner prescribed by law, that she is deportable and hence here illegally, she may then make an application for section 212(c) relief pursuant to *Francis* v. *INS,* 532 F.2d 268 (2 Cir. 1976); *Matter of Silva,* Interim Decision 2532 (BIA 1976).

At the same time, it must be recognized that a District Director has every right, in fact, a duty, to exercise his prosecutive judgment whether or not to institute a deportation proceeding against an alien who appears to be illegally in the United States. If, in screening the file of, and possibly after consultation with, such an alien, it appears to him that a deportation proceeding would surely result in a grant of section 212(c) relief under *Francis, supra,* it would be pointless to institute an expensive, vexatious, and needless deportation proceeding. In such a case, I see nothing improper in his noting the record to this effect, and in declining to issue an Order to Show Cause. This is not a "grant" of section 212(c) relief. It differs, for example, from suspension of deportation, which by statute, requires the institution of deportation proceedings and results in the creation of a *new* record of lawful admission. *GORDON* already has a record of lawful admission. In

other cases where the District Director grants relief to a deportable alien prior to a hearing, such as voluntary departure (section 244, 8 U.S.C. 1254), adjustment of status (section 245, 8 U.S.C. 1255), registry (section 249, 8 U.S.C. 1259), etc., his action is authorized by statute or regulation. No such regulation exists here, nor is there need for one.

On the other hand, if the District Director, after appropriate screening, decides the alien may *not* warrant section 212(c) relief, then it is his prerogative to issue an Order to Show Cause in deportation proceedings. There the alien may contest, with all the safeguards of the due process hearing accorded her by statute, the unproved assumption that she is deportable. Once found deportable, she may seek any relief for which she is eligible.

In contrast, in this case, the District Director entertained an application *based on an implied finding of deportability*, without proper hearing and possibly without awareness on the part of the alien of the right guaranteed her by statute to contest such a finding. Her "application" was then formally denied in a nonadversary proceeding, with a recitation of adverse factors. These findings are a part of her file and can easily result in prejudice in any further proceedings. Her appeal to this Board was based on an inadequate record and is duplicative, since the entire process will be repeated in the subsequent deportation proceeding. If there is to be no subsequent deportation proceeding, this entire exercise is pointless, and she should have been left alone to enjoy her lawful permanent status in the first place.

It perhaps exceeds the range of this decision to set forth what should have occurred. Nevertheless, as a minimum, any notice sent to an alien as a preliminary to the possible issuance of an Order to Show Cause and as a result of initial screening for eligibility for section 212(c) relief should advise that while she "may" be deportable, it may not be necessary to institute proceedings in view of her 7 years or more of lawful permanent residence; that to assist in a determination whether or not to institute a proceeding an interview would be desirable; that she could have counsel or a representative present if she wished; that her appearance is entirely voluntary; that this would be merely a preliminary interview and that she would be given full opportunity before any final decision was rendered, to contest her deportability at a hearing, and to make formal application for any relief for which she might qualify (including section 212(c)). The notice could advise of appropriate evidence which would assist the District Director in his determination whether or not to institute proceedings. The notice could be sent only if it appeared the likelihood of getting the relief was high, or if it was impossible to make any judgment from the existing record. A recent and serious crime, with an obvious failure of rehabilitation and an absence of countervailing equities, such as close

family ties, might dictate a negative posture and the immediate issuance of an Order to Show Cause.

Such a procedure would serve the objectives of both the Service and the alien—the former in that it would result in a determination to leave the alien in her present lawful status and to close the file, and the latter in that she would either have her case put to rest, or could fully and properly, in the manner provided by law, contest the issues before an immigration judge. And as a felicitous result, a double review would be eliminated in the event of an appeal.

Since the procedure in this case was totally defective, I agree it should be declared a nullity, and have concurred in the majority decision. The proceedings, in my opinion, are subject to renewal only in de novo proceedings which conform substantially to the foregoing.