United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 23, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-60878
_____

PETRA CARRANZA-DE SALINAS,
also known as Petra Rodriguez-Salinas,

Petitioner,

versus

ALBERTO GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of
the Board of Immigration Appeals
_____

Before JOLLY, HIGGINBOTHAM, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The Appellant, Petra Carranza-de Salinas ("Carranza"), petitions for review of the decision of the Board of Immigration Appeals ("BIA") holding that she is ineligible to apply for relief from deportation based on former § 212(c) of the Immigration and Nationality Act. Carranza claims that she deferred her application for § 212(c) relief in order to establish a stronger record of rehabilitation, in reliance on the continued availability of § 212(c) relief. Because the BIA erred in finding her ineligible to apply for § 212(c) relief without allowing her the opportunity to demonstrate that her actual, subjective reliance on the prior state of the law caused her to delay her application, we GRANT the petition for review, VACATE the BIA's order, and REMAND.

Carranza is a native and citizen of Mexico. She became a lawful permanent resident of the United States on August 29, 1985. On August 16, 1993, after a trial by jury, Carranza was convicted in Louisiana state court of possessing marijuana with intent to distribute. She claims she did not immediately apply for § 212(c) discretionary relief after her conviction because she intended to apply during her deportation proceedings, at which time she would be able to show a more extensive record of rehabilitation and community ties. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which repealed § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (1994).

In 1997, a Notice to Appear was issued, charging Carranza with removability on the basis of her conviction for the drug offense. The INS further charged Carranza as removable for having been convicted of a substance abuse offense. During a hearing on January 9, 1999, an Immigration Judge ("IJ") found that Carranza's conviction remained in effect for immigration purposes and sustained both charges of removal. At that hearing, Carranza sought a waiver of deportation under former § 212(c) of the INA. The INS conceded her eligibility for § 212(c) relief and a date was set for the merits hearing.

On April 14, 2003, the date of the merits hearing, the INS challenged Carranza's eligibility for § 212(c) relief because she

had declined a plea agreement and had elected to be tried by a jury. Carranza's attorney asked for a continuance to prepare to respond on that issue. The IJ denied the request and, apparently without hearing arguments on Carranza's eligibility, ordered her removed.[1] Carranza appealed to the BIA. On March 11, 2004, the BIA issued an order remanding to the IJ for the sole purpose of preparing a written decision.

On January 10, 2005, in compliance with this directive, the IJ issued a written order formalizing the earlier findings.[2] On August 23, 2005, the BIA dismissed Carranza's appeal, holding that the Third Circuit case, Ponnapula v. Ashcroft, 373 F.3d 480 (3d Cir. 2004), that she cited in support of her argument for eligibility was not applicable to cases arising within the Fifth Circuit's jurisdiction,[3] and that Carranza had cited no binding

---

[1] The IJ apparently found that it was "fatal to this respondent's case that she was convicted by jury" and that it was "in the best interest of judicial efficiency to at this point find that respondent is not eligible for relief and let the Appeals Court make a decision as to whether she should be eligible or not."

[2] The IJ stated that "[t]he Court certainly believes ... that there are compelling arguments that have been made by Ms. Carranza during the course of these proceedings that would permit the Court to allow her to pursue a § 212(c) waiver in this matter, even though she was found guilty by a jury, particularly given that there is no case law out there that would necessarily prohibit her from pursuing said remedy." The IJ concluded, however, that given that the matter would be appealed by either side, the court would decline to decide the question of first impression and held that Carranza was not, under the current case law, eligible for § 212(c) relief.

[3] In Ponnapula, the Third Circuit held that the IIRIRA repeal of § 212(c) was impermissibly retroactive with respect to an alien

precedent supporting a motion to remand. The BIA further noted that recently enacted regulations limit § 212(c) relief to aliens who were convicted by plea agreement. Carranza timely petitioned for review.

## II.

On appeal, Carranza again argues that she should be eligible to apply for § 212(c) relief, despite the enactment of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") and IIRIRA. We have jurisdiction to review this matter under § 242 of the INA, 8 U.S.C. § 1252, as amended by the REAL ID Act of 2005. Under the amended Act, this court may review constitutional questions and questions of law.

This court reviews the BIA's conclusions of law de novo, although it defers to the BIA's reasonable interpretation of immigration regulations. See Lopez-Gomez v. Ashcroft, 263 F.3d 442, 444 (5th Cir. 2001). No deference is owed to the BIA's conclusions of law regarding the retroactive availability of § 212(c) relief. Hernandez-Castillo v. Moore, 436 F.3d 516, 519 (5th Cir. 2006).

---

who had rejected a plea agreement and was convicted by a jury prior to IIRIRA's enactment. Id. at 500.

4

III.

Under § 212(c) of the INA, the Attorney General had "broad discretion to admit excludable aliens."[4] INS v. St. Cyr, 533 U.S. 289, 294-95 (2001). As deportable offenses have historically been defined broadly, "the class of aliens whose continued residence in this country has depended on their eligibility for § 212(c) relief is extremely large, and ... a substantial percentage of their applications for § 212(c) relief have been granted.[5] Id. at 295-96. Between 1990 and 1996, Congress enacted three statutes, "reduc[ing] the size of the class of aliens eligible for such discretionary relief." Id. at 297. In 1990, Congress eliminated the possibility of § 212(c) relief for "anyone convicted of an aggravated felony who had served a term of imprisonment of at least five years." Id. On April 24, 1996, Congress adopted § 440(d) of AEDPA, which "identified a broad set of offenses for which convictions would preclude such relief." Id. Later that same year, Congress passed IIRIRA, which "inter alia, repealed § 212(c)

_____

[4] Section 212(c), codified at 8 U.S.C. § 1182(c), stated: "Aliens lawfully admitted for permanent residence who temporarily proceed abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General ...." Section 212(c) was interpreted by the BIA "to authorize any permanent resident with a lawful unrelinquished domicile of seven consecutive years to apply for discretionary waiver from deportation." INS v. St. Cyr, 533 U.S. 289, 295 (2001).

[5] Between 1989 and 1995, "212(c) relief was granted to over 10,000 aliens." Id. at 296.

5

... and replaced it with a new section that gives the Attorney General the authority to cancel removal for a narrow class of inadmissible or deportable aliens ...." Id. at 297. This class does not include anyone previously convicted of an "aggravated felony." Id. In short, after AEDPA and IIRIRA, Carranza, who had been eligible for such relief, was now excluded from the class.

In 2001, however, the Supreme Court decided INS v. St. Cyr, in which it considered whether an alien who pled guilty to an aggravated felony prior to the repeal of § 212(c) was still eligible to apply for a waiver of deportation notwithstanding the change in the applicable law. Applying the test laid out in Landgraf v. USI Film Products, 511 U.S. 244 (1994), the Court first determined that Congress had not clearly expressed the intent to have IIRIRA § 304(b) apply retroactively. The Court then considered "the second step of Landgraf's retroactivity analysis to determine whether depriving removable aliens of consideration for § 212(c) relief produces an impermissible retroactive effect for aliens who ... were convicted pursuant to a plea agreement at a time when their plea would not have rendered them ineligible for § 212(c) relief." St. Cyr, 533 U.S. at 320.

Applying a "commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment," id. at 321 (internal quotation marks and citation omitted), the Court found that the elimination of § 212(c) relief for people who entered into plea agreements clearly

6

"attaches a new disability, in respect to transactions or considerations already past." Id. (internal quotation marks and citation omitted). The Court reasoned that as plea agreements involve a quid pro quo between a criminal defendant and the government, to deprive the defendant of their continued eligibility for § 212(c) relief after the government had received the benefit of the plea bargain, "would surely be contrary to 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" Id. at 323 (quoting Landgraf, 511 U.S. at 270). Finding that aliens likely relied upon the significant likelihood of receiving § 212(c) relief in choosing to forgo their right to trial, the Court concluded that eliminating such relief "has an obvious and severe retroactive effect." Id. at 325. Consequently, it held that St. Cyr was entitled to apply for relief under the statute in effect at the time of his plea agreement.

IV.

St. Cyr, however, addressed IIRIRA's retroactive effect only in regard to aliens who pled guilty prior to the elimination of § 212(c) relief. In Hernandez-Castillo v. Moore, this court considered whether a legal permanent resident who had been convicted after a jury trial was eligible for § 212(c) relief under St. Cyr, and we concluded that he was not. 436 F.3d 516, 520 (5th Cir. 2006). In reaching this holding, the court adopted the

7

reasoning laid out by the Second Circuit in <u>Rankine v. Reno</u>, 319

F.3d 93 (2d Cir. 2003). The <u>Rankine</u> court stated that:

> aliens who chose to go to trial are in a
> different position with respect to IIRIRA than
> aliens like St. Cyr who chose to plead guilty
> .... First, none of these petitioners
> detrimentally changed his position in reliance
> on continued eligibility for § 212(c) relief
> .... Second, the petitioners have pointed to
> no conduct on their part that reflects an
> intention to preserve their eligibility for
> relief under § 212(c) by going to trial. If
> they had pled guilty, petitioners would have
> participated in the <u>quid</u> <u>pro</u> <u>quo</u> relationship,
> in which a greater expectation of relief is
> provided in exchange for foregoing a trial,
> that gave rise to the reliance interest
> emphasized by the Supreme Court in <u>St. Cyr</u>.
> As the Court made clear, it was that reliance,
> and the consequent change of immigration
> status, that produced the impermissible
> retroactive effect of IIRIRA. Here
> petitioners neither did anything nor
> surrendered any rights that would give rise to
> a comparable reliance interest.

<u>Hernandez-Castillo</u>, 436 F.3d at 520 (quoting <u>Rankine</u>, 319 F.3d at

99-100) (internal citation omitted). Applying this reasoning, we

concluded "that the application of IIRIRA's repeal of § 212(c) to

Hernandez-Castillo does not create an impermissible retroactive

effect." <u>Id.</u>

After <u>Hernandez-Castillo</u>, this circuit requires an applicant

who alleges continued eligibility for § 212(c) relief to

demonstrate actual, subjective reliance on the pre-IIRIRA state of

the law to be eligible for relief from its retroactive application.

The applicant must show that he "detrimentally changed his position

8

in reliance on continued eligibility for § 212(c) relief" or that he actively engaged in conduct that "reflect[ed] an intention to preserve [his] eligibility for relief under § 212(c) ...." Id. (quoting Rankine, 319 F.3d at 99-100). Because the reliance demonstrated must be actual, the determination of retroactive effect is made as to the individual applicant, not as to a group of similarly-situated applicants. See id. ("[T]he application of IIRIRA's repeal of § 212(c) to Hernandez-Castillo does not create an impermissible retroactive effect.") (emphasis added).

## V.

Carranza argues that IIRIRA is impermissibly retroactive with respect to her case because she acted in reliance on the continuing availability of § 212(c) when she made the decision to defer her application for relief in order to establish a history of rehabilitation.[6]

---

[6] Carranza makes several other arguments for relief, all of which are meritless. First, relying on the Fourth Circuit's decision in Olatunji v. Ashcroft, 387 F.3d 383, 389-91 (4th Cir. 2004), she contends that reliance is not a required part of the retroactivity analysis. In the alternative, she argues that the decision to go to trial itself demonstrates reliance, citing Ponnapula v. Ashcroft, 373 F.3d 480 (3d Cir. 2004). Both of these arguments are foreclosed by Hernandez-Castillo, which held that the applicant must show actual reliance to demonstrate an impermissible retroactive effect.

Finally, Carranza argues that where a legal permanent resident awaits deportation proceedings, rather than affirmatively filing for § 212(c) relief, reliance must be presumed, rather than actual. Again, this seems contradictory to the express language of Hernandez-Castillo, in which the panel made an individualized determination of actual reliance with regard to Hernandez-Castillo, who failed to demonstrate that he "did anything [or] surrendered

A.

At oral argument, the Government for the first time suggested that Carranza failed to exhaust her administrative remedies with respect to this argument. "Judicial review of a final removal order is available only if the applicant has exhausted all administrative remedies as of right." Darwich v. Gonzalez, 2006 WL 2852926 at *1 (5th Cir. Oct. 3, 2006) (unpublished) (per curiam) (citing 8 U.S.C. § 1252(d)(1)). "An alien fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the BIA - either on direct appeal or in a motion to re-open." Wang v. Ashcroft, 260 F.3d 448, 452 (5th Cir. 2001).

Contrary to the Government's assertion, however, Carranza appears to have raised this argument, although in a less developed form, before the BIA. In her appeal to the BIA, Carranza argued that the logic of St. Cyr was not limited to cases in which an alien had pled guilty, but could also apply in situations in which an alien had proceeded to trial. Because this brief was filed prior to this court's decision in Hernandez-Castillo, Carranza focused on the broader argument that the decision to go to trial itself could create the reliance interest necessary to create an

---

any rights that would give rise to a ... reliance interest." Hernandez-Castillo, 436 F.3d at 520. The practical result of such a presumption would be that IIRIRA would be impermissibly retroactive to any legal permanent resident convicted by jury trial prior to its passage, which would be contrary to both the analysis and the result in Hernandez-Castillo.

impermissible retroactive effect. In support of this argument, she quoted language from the Third Circuit opinion in Ponnapula, holding that:

> with respect to an alien who reasonably could have relied on the potential availability of § 212(c) relief, application of the Landgraf principles shows that IIRIRA section 304(b) has an impermissible retroactive effect. Moreover, on this record, where the petitioner demonstrated clear and actual reliance on the former statutory scheme in making the decision to go to trial, there is a fortiori an impermissible retroactive effect.

373 F.3d at 483. On this basis, Carranza argued to the BIA that her case should be remanded to "to give her the opportunity to demonstrate ... reliance, (if required), and thereafter to seek § 212(c) relief."

Carranza did attempt, before the BIA, to argue that an impermissible retroactive effect is triggered by a showing of reliance and that she should be permitted to present evidence as to her actual reliance before the IJ. Although Carranza's theory of reliance was modified after the panel holding in Hernandez-Castillo, the BIA clearly had the opportunity to address her claim that actual reliance by an alien on the continued availability of § 212(c) relief triggered an impermissible retroactive effect after St. Cyr. The BIA declined to address this argument in any fashion, finding itself bound by the limits of 8 C.F.R § 1003.44(a) and by the absence of precedential authority from our court. We therefore hold that the issue Carranza presents on this appeal has been

11

adequately exhausted before the BIA, and that we therefore have jurisdiction to consider her appeal.  We now turn to consider the question whether Carranza has made a showing that the statute is impermissibly retroactive with respect to her.

B.

In support of her argument that her decision to defer application for § 212(c) relief provides a basis for showing actual reliance, Carranza cites Restrepo v. McElroy, 369 F.3d 627 (2d Cir. 2004), a Second Circuit case decided after Rankine, in which the court held that an applicant's decision to postpone applying for § 212(c) relief to create a longer record of rehabilitation and community ties may create a sufficient reliance interest to create an impermissible retroactive effect of the statute.[7]

Restrepo argued that he had given up "something of value (the opportunity to apply for § 212(c) relief immediately after his conviction) in reliance on his ability to apply for § 212(c) relief at a later time."   Id. at 633-34. In considering a § 212(c) application, an immigration judge must weigh "'the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf.'" Id. at 634 (quoting Lovell v. INS, 52 F.3d 458, 461 (2d. Cir. 1995)).   "Favorable considerations include the duration of the

_____

[7] Restrepo's eligibility for relief was eliminated by § 440(d) of the AEDPA. IIRIRA applies only to deportation proceedings instituted after April 1, 1997.  Restrepo, 369 F.3d at 630 n.4.

12

alien's residence in the country, his history of employment, the existence of property or business ties, evidence of service to the community, and proof of genuine rehabilitation if the alien has a criminal record."  Id. (internal quotation marks and citation omitted).  Given the relevant factors, the Second Circuit concluded that "an alien convicted of a deportable crime would be motivated to wait as long as possible to file a 212(c) application in the hope that he could build a better case of relief - one that shows longer residence in the United States, deeper community ties, and, perhaps most significantly, stronger proof of rehabilitation." Id. Of course, the decision to postpone the application would be contingent on the applicant's belief that "212(c) relief would remain available later."  Id.

Analogizing to St. Cyr, the Restrepo court concluded that

> [j]ust like the aliens in St. Cyr, who sacrificed something of value - their right to a jury trial, at which they could obtain an outright acquittal - in the expectation that their guilty pleas would leave them eligible for § 212(c) relief, an alien like [Restrepo] also sacrificed something - the shot of obtaining § 212(c) relief by immediately filing - in order to increase his chances of obtaining such relief later on.  Such an alien conformed his or her conduct according to the availability of relief, and therefore had settled expectations that would be severely upset were the AEDPA to be applied retroactively.

13

Id. at 634-35 (internal quotation marks and citation omitted).  The
court remanded the case to the district court[8] to determine whether
Restrepo could "claim the benefit of his argument."  Id. at 633.

The Government argues that Restrepo is not representative of
the law of the Second Circuit, citing Rankine and Thom v. Ashcroft,
369 F.3d 158, 161-62 (2d Cir. 2004), for the proposition that an
alien convicted by jury trial is ineligible for § 212(c) relief.
Although the Government is correct that under Rankine (and
Hernandez-Castillo), an applicant cannot demonstrate eligibility
for § 212(c) relief merely on the basis that he or she chose to go
to trial, Rankine does not foreclose the applicant from presenting
other arguments in support of his or her claim for detrimental
reliance.  The Restrepo panel itself devoted considerable space to
distinguishing Rankine, explaining that:

> As in St. Cyr, aliens like Petitioner incurred
> a heightened expectation of prospective relief
> flowing from their choice to forgo building a
> stronger record and filing at a later date.
> Furthermore, while aliens who elected a jury
> trial cannot plausibly claim they would have
> acted any differently if they had known about
> AEDPA, it is certainly plausible that aliens
> who decided to forgo affirmatively filing a
> 212(c) application would have acted
> differently if they had foreseen the AEDPA's
> enactment.  Many might well have chosen
> affirmatively to file the "weaker," but still
> valid, application.  To the extent that aliens

[8] Restrepo raised these arguments through a habeas petition
pursuant to 28 U.S.C. § 2241.  The subsequent enactment of the REAL
ID Act of 2005 forecloses habeas review of removal orders and
provides that a petition for review is the sole and exclusive means
of judicial review for all removal orders.

14

> like Petitioner detrimentally adopted their positions in reliance of [sic] their expectation of continued eligibility for 212(c) relief, the factors considered in <u>Rankine</u> appear to weigh against proscribing such relief retroactively.

<u>Restrepo</u>, 369 F.3d at 637. Contrary to the Government's position, <u>Restrepo</u> was not merely an aberration. The <u>Thom</u> court, while holding that the decision to contest criminal charges at trial does not give rise to reasonable reliance, also noted that Thom did not "claim any other basis for such a reliance or expectation" (citing <u>Restrepo</u>), before holding that IIRIRA and the AEDPA could be applied retroactively to him.[9] <u>Thom</u>, 329 F.3d at 163.[10]

### C.

We find the reasoning of the <u>Restrepo</u> Court persuasive and see no need to create a circuit split on this issue. Before the enactment of AEDPA and IIRIRA, the BIA itself recognized and endorsed a "waiting strategy" for aliens facing deportation. In <u>Matter of Gordon</u>, 17 I. & N. Dec. 389 (BIA 1980), the District

---

[9]The Government also notes that the <u>Hernandez-Castillo</u> court rejected Hernandez's suggestion that he be granted the opportunity to show that he rejected a guilty plea and elected to be tried by jury on the basis of the future availability of § 212(c) relief. The Government correctly explains that the decision to stand trial alone has no impact on the alien's immigration status. While this is a persuasive argument against finding impermissible retroactivity on the basis of an applicant's decision to go to trial, it does not speak to the separate reliance analysis of the decision to postpone the § 212(c) application.

[10] Additionally, the <u>Thom</u> opinion was authored by the judge who wrote <u>Restrepo</u>, which belies the argument that <u>Restrepo</u> was thought by <u>Thom</u> to be an opinion of questionable authority.

15

Director sent letters to convicted aliens not yet involved in deportation proceedings, encouraging them to make advance applications for § 212(c) relief. An alien applied and the INS rejected her application. On appeal, the BIA set aside this determination, holding that the Director had unfairly induced the application and observing that

> [c]onfined aliens and those who have recently committed criminal acts will have a more difficult task in showing that discretionary relief should be exercised in their behalf than aliens who have committed the same offenses in the more distant past. Common sense and prudence suggest that a recently convicted alien should prefer to let a considerable time elapse before offering to demonstrate rehabilitation.

Id. at 391-92 (internal quotation marks and citation omitted). The fact that the BIA effectively encouraged aliens to wait for the initiation of deportation proceedings to apply defensively supports the reasonableness of a deferment strategy, dependent on the continued availability of § 212(c) relief. The disruption of this strategy would be contrary to the touchstone considerations of statutory retroactivity, that is "fair notice, reasonable reliance, and settled expectations." Martin v. Hadix, 527 U.S. 343, 358 (1999) (quoting Landgraf, 511 U.S. at 270).[11]

---

[11] At oral argument, the Government argued for the first time that this appeal is controlled by the Supreme Court's decision in Fernandez-Vargas v. Gonzales, 126 S.Ct. 2422 (2006). We find this case distinguishable. Unlike Fernandez-Vargas, whose only argument was that the law governing his removal, IIRIRA § 241(a)(5), became less favorable to him while he was illegally present in this country, Carranza, a legal permanent resident, contends that she

16

VI.

Carranza claims that she affirmatively chose not to apply for § 212(c) relief immediately after her conviction, but instead to wait until deportation proceedings were initiated so as to have time to establish her rehabilitation and ties to the community.[12] Because the IJ declined to permit Carranza to make a record on her retroactivity claim, we can reach no holding on the merits of her case. If, however, Carranza can demonstrate on remand that she

_____

specifically relied on the continued availability of § 212(c) relief in delaying her application while developing a record of rehabilitation. We again join the Second Circuit, which considered the effect of Fernandez-Vargas on its earlier holdings and concluded that the genesis of the case law "makes clear that the continued availability of § 212(c) relief depends on the reliance of those now seeking the benefit of that relief." Wilson v. Gonzales, -- F.3d --, 2006 WL 3541717 at * 9 (2d Cir. Dec. 7, 2006). It is "not enough for the alien to profess his unilateral assumption about the continued validity of prior law," id., for "[i]f every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever." Fernandez-Vargas, 126 S.Ct. at 2433 (citation omitted). Instead, to demonstrate impermissible retroactivity, an applicant must show that he detrimentally changed his position in reliance on continued eligibility for § 212(c) relief" or that he actively engaged in conduct that "reflect[ed] an intention to preserve [his] eligibility for relief under § 212(c) ...." Hernandez-Castillo, 436 F.3d at 520 (quoting Rankine, 319 F.3d at 99-100). Fernandez-Vargas does not, therefore, preclude Carranza from raising her claim that she forwent submitting an immediate application for § 212(c) relief in actual reliance on the reasonable belief that such relief would still be available at the time of her deportation proceeding, and that her application would be improved by its deferral.

[12] In the intervening period, Carranza claims to have had her conviction set aside under a rehabilitation statute. She also claims that she has two U.S. citizen children, owns property, has been steadily employed, and has paid her taxes.

17

affirmatively decided to postpone her § 212(c) application to increase her likelihood of relief, then she has, under Hernandez-Castillo, established a reasonable "reliance interest" in the future availability of § 212(c) relief comparable to that of the applicants in St. Cyr and she is entitled to make her application for relief.  We therefore GRANT the petition for review, VACATE the BIA's order, and REMAND this case to the BIA for further proceedings not inconsistent with this opinion.

PETITION GRANTED, VACATED and REMANDED.