United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 3, 2007**

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the F ifth Circuit

---

m 05-61169

---

PUANGSUK HONGYOK,

Petitioner,

VERSUS

ALBERTO R. GONZALES,
U.S. ATTORNEY GENERAL,

Respondent.

---

Petition for Review of a Decision of
the Board of Immigration Appeals
m A79 733 664

---

Before GARWOOD, SMITH, and DEMOSS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Puangsuk Hongyok seeks review of a decision of the Board of Immigration Appeals ("BIA") denying withholding of removal under 8 U.S.C. § 1231(b)(3) and protection under the Convention against Torture ("CAT"), 8 C.F.R. §§ 1208.16 through -18. We deny the petition.

I.

Hongyok is an adult female native and citizen of Thailand. In 1999 or 2000 she entered the United States at or near Los Angeles, California, either without inspection or as a tourist. In February 2003 she was charged with being removable as an alien illegally present in the United States. She appeared before an immigration judge ("IJ"), who found that she was in the United States illegally and thus was removable.

Because she was unable to establish that she had sought asylum within one year of en-

tering the United States, Hongyok sought withholding of removal and relief under the CAT in lieu of asylum. She contended that she would be subject to persecution and torture because she is a member of a "particular social group" composed of victims of sex trafficking who have escaped.[1]

Hongyok testified that she had intended to leave Thailand to come to the United States with people who had promised her a job. Instead, her passport was taken away from her, and she was taken to New York and forced to work as a prostitute to repay a $45,000 debt owed to the people who had brought her to the United States. She was confined inside a New York brothel for six months by persons she identified as Kim and Yok.

At the end of her time in New York, Hongyok was told she had paid off $30,000 of the debt and was taken to Chicago and then to Atlanta. Apparently her stay in Atlanta was unprofitable for the traffickers, and she was told to return to New York.

Instead, Hongyok used money she had received in Atlanta to fly to Los Angeles. She went from Los Angeles to Philadelphia, Atlantic City, and Houston. She was arrested for prostitution in all three of the latter cities.

Hongyok testifies that she still owes Kim and Yok $5,000, and they are still looking for her and have called her mother in Thailand "about five times" to say Hongyok still owed them money and was in "big danger" of being hurt. Hongyok believes associates of Kim and Yok will kill her if she returns to Thailand, and there is nowhere in Thailand where she would be safe from the traffickers.

Hongyok does not believe the Thai government will protect her from Kim and Yok or their gang, because the Thai police have been thoroughly corrupted by sex traffickers. She also presented documentary evidence reporting a widespread sex trade in Thailand and southeastern Asia and the Thai government's toleration of and complicity in sex trafficking.

II.

Although the IJ granted withholding of removal and relief under the CAT, the BIA reversed. The BIA declined to categorize escaped sex trafficking victims as a particular social group and found that Hongyok's fears of persecution were based on an outstanding debt. The BIA further determined that Hongyok had failed to meet her burden to prove that persecution on her return to Thailand was "more likely than not." *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987). The BIA pointed out that Hongyok had not specified when the alleged threatening phone calls to her mother had been made; it concluded that the callers "seemed more interested in having the debt repaid than in seeking [Hongyok]."

III.

We review the BIA's decision, not that of the IJ. *See Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997). Where the BIA has not adopted the IJ's conclusion or findings, the IJ's determinations are irrelevant to our review. *See id.*; *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994).

The government argues that we lack even the authority to review the BIA's decision, because Hongyok has failed to exhaust her

---

[1] *See* § 1231(b)(3) (providing relief for aliens subject to removal who, if removed, would be subject to persecution on the basis of membership in a particular social group).

administrative remedies.[2] We disagree.

The government emphasizes that Hongyok's proposed group of "sex trafficking victims who escape from a sex trafficking ring" was not adopted by the IJ and thus was not before the BIA on the government's appeal. Instead the IJ defined the protected social group as "sex slaves from foreign countries who are brought to the United States under false pretenses and forced at the threat of death and destruction to participate in sexual activities."

This disparity, however, does not implicate the straightforward requirement that a petitioner present her ground for relief to the administrative agency in the first instance in order to avoid waiver. *Wang v. Ashcroft*, 260 F.3d 448, 452 (5th Cir. 2001). Hongyok has asked for the same reliefSSwithholding of removal because of membership in a protected social group and protection under the CATSS at every agency and judicial level involved in this case and has done so with the same proposed formulation of the social group. The government fails to point to any material difference between Hongyok's proposed social group and the one adopted by the IJ.

We are aware of no case conditioning federal court jurisdiction on the absence of insignificant semantic differences between a petitioner's proposed social group and the definition formulated by the agency, and we decline to announce such a condition here. Although the IJ's formulation of the social group might be somewhat more legally precise than that proposed by HongyokSSand Hongyok would

have been entitled to defend itSSshe is not conclusively barred from judicial relief; she presents the court with the same definition she originally proposed to the agency, and that definition does not significantly differ from the one considered on appeal by the BIA. She has adequately presented her proposed ground for relief to the administrative agency in the first instance. *See id.* at 452.

IV.

We need not and do not address the BIA's legal conclusion that escaped sex slaves are not a protected social group; the BIA's factual conclusion that Hongyok has failed to meet her burden to prove that she personally would more likely than not be subject to persecution in Thailand is supported by substantial evidence.[3] No alien is entitled to statutory withholding of removal unless the Attorney General finds that there is a "clear probability," i.e., "[u]nless it is more likely than not," that the alien will be subjected to persecution on account of race, religion, membership in a particular social group or political opinion if she is returned to her country of origin. *INS v. Stevic*, 467 U.S. 407, 424, 430 (1984). Under the substantial evidence standard, the BIA's finding is "conclusive unless any reasonably adjudicator would be compelled to conclude to the contrary."[4]

The BIA's finding is supported by its observations that Hongyok did not specify whether the calls to her mother were made recently and did not otherwise indicate how

---

[2] *See* 8 U.S.C. § 1252(d)(1); *see also Townsend v. INS*, 799 F.2d 179, 181 (5th Cir. 1984) (stating that § 1252(d)(1)'s administrative exhaustion requirement implicates the court's jurisdiction).

[3] *See Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002) (reviewing BIA factual determinations for substantial evidence).

[4] 8 U.S.C. § 1252(b)(4)(B); *see also Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 351 (5th Cir. 2002).

3

the people she fears would harm her would find her in Thailand, given that she need not declare to anyone why she was returning or discuss her experiences in the United States. Because a reasonable finder of fact would not have been compelled to find that it is more likely than not that Hongyok would be persecuted on her return to Thailand, we are obliged to affirm the BIA's conclusion.[5] *See Efe*, 293 F.3d at 906.

## V.

Withholding of removal pursuant to the CAT requires a finding not merely of probable persecution, but also that the persecution would amount to torture. 8 C.F.R. § 1208.18-(a)(1); *Efe*, 293 F.3d at 907. A determination of "torture" requires, *inter alia*, that the requisite degree of "pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." § 1208.18-(a)(1). The torture need not be inflicted as a result of membership in a social group. *Efe*, 293 F.3d at 907.

Analyses of an alien's eligibility for statutory withholding of removal and of his eligibility for relief under the CAT are independent. *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 350 (5th Cir. 2006). The BIA's finding, however, discussed above and supported by substantial evidence, that Hongyok failed to demonstrate that she would probably be subject to persecution is sufficient to support its ruling that she was not eligible for protection under the CAT because she has failed to demonstrate that she will likely suffer "pain and suffering" at anyone's hands and thus has failed to demonstrate that she would be subject to torture. *Id*. at 350-51.

Accordingly, we DENY the petition for review.

---

[5] Hongyok's counsel contended at oral argument that the BIA was obliged to review the IJ's findings of fact for clear error, rather than *de novo*. *See* 8 C.F.R. § 1003.1(d)(3)(i). Hongyok's procedural right to the application of a particular standard of review is reviewable. *See* 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."). We need not evaluate whether the BIA used an incorrect standard of review, however, because Hongyok's failure to raise this contention in her opening brief waived the issue. *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000).