# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 24, 2010

No.  08-60661

Lyle W. Cayce
Clerk

CARLYLE LESLIE OWEN DALE,

Petitioner,

v.

ERIC H.  HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Final Order of
the Board of Immigration Appeals

Before JONES, Chief Judge, SMITH and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge.

Carlyle Leslie Owen Dale petitions this court for review of a decision by the Board of Immigration Appeals (BIA) upholding his order of removal under 8 U.S.C. § 1101(a)(43)(F) for being convicted of an aggravated felony (a crime of violence).  Dale contends that the BIA incorrectly interpreted New York law in determining that his guilty plea to attempted assault under New York Penal Law § 120.10 (1)-(4) in New York state court was necessarily a plea to either subsection (1) or (2), both of which he concedes are crimes of violence, rather than subsections (3) and (4), which are not.  The government does not contest Dale's characterization of the BIA's legal error, but argues only that this court lacks jurisdiction to review the BIA's decision because Dale failed to exhaust his

No. 08-60661

administrative remedies by failing to bring a motion for reconsideration to the BIA. We hold that this court does have jurisdiction to review the decision and that the BIA's legal conclusion was in error.

## I. Factual and Procedural History

Dale, a Jamaican citizen and lawful permanent resident of the United States, pleaded guilty to attempted assault in the first degree in violation of New York Penal Law § 120.10 (McKinney 2009). The Department of Homeland Security (DHS) later instituted removal proceedings, charging him as an alien convicted of an aggravated felony. The Immigration Judge (IJ) found that Dale was removable as charged. The BIA affirmed the IJ's decision, and Dale petitioned for review. This court remanded the case to the IJ on the government's request because Dale's conviction record did not specify which of the four crimes[1] defined by § 120.10 Dale pleaded to in his attempt conviction.

The BIA in turn remanded to the IJ. The IJ found that because the indictment charged Dale with a § 120.10(1) violation, Dale must have pleaded guilty to an attempted violation of § 120.10(1)—a "crime of violence" constituting an aggravated felony. Accordingly, the IJ ordered him removed. *See* 8 U.S.C. § 1229a(c)(3)(A); 18 U.S.C. § 16(a)-(b). Dale appealed that decision to the BIA,

---

[1] New York Penal Law § 120.10 provides that a person is guilty of assault in the first degree when:

1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or
2. With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or
3. Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person; or
4. In the course of and in furtherance of the commission or attempted commission of a felony or of immediate flight therefrom, he, or another participant if there be any, causes serious physical injury to a person other than one of the participants.

2

contending that DHS did not meet its burden of proving that he was convicted of an aggravated felony where there was no evidence in the judgment specifying which subsection of § 120.10 he violated, as not all subsections of § 120.10 define aggravated felonies.

The BIA did not address the IJ's determination that the indictment was sufficient to imply a conviction under that subsection, nor did it specifically address Dale's claim that the government failed to produce any evidence that he had been convicted under the actual subsection charged in the indictment. The BIA instead concluded *sua sponte* that, as a matter of law, Dale must have been convicted under either subsection (1) or subsection (2) of § 120.10. The BIA reasoned that only these two subsections contain a *mens rea* requirement that could support attempt liability. Accordingly, it determined that New York courts would not have permitted Dale to plead guilty to subsections (3) and (4) because attempted reckless assault (§ 120.10(3)) and attempted felony assault (§ 120.10(4)) are legally impossible crimes. The BIA then dismissed his appeal, finding it unnecessary to determine whether Dale was convicted under subsection (1) or (2), as either constituted a "crime of violence" warranting Dale's removal from the United States.

Dale remains in the United States pursuant to an order by this court staying removal. He filed a timely petition for review with the Second Circuit, and his petition was subsequently transferred to this court.

## II. Jurisdiction and Standard of Review

Our jurisdiction to review the BIA's removal order is governed by § 242 of the Immigration and Nationality Act, 8 U.S.C. § 1252. Section § 1252(a)(2)(C) generally prohibits review of "any final order of removal against an alien who is removable by reason of having committed [an aggravated felony]." However, the REAL ID Act grants us jurisdiction to review "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). The question whether a past conviction constitutes an aggravated felony is "a purely legal

No. 08-60661

one," which we review *de novo*. *Patel v. Mukasey*, 526 F.3d 800, 802 (5th Cir. 2008).

We review "only an order of the BIA, not the IJ, unless the IJ's decision has some impact on the BIA's decision." *Mikhael v. I.N.S.*, 115 F.3d 299, 302 (5th Cir. 1997) (citation omitted). Because the BIA adopted only the IJ's "ultimate conclusion" and not its reasoning, we review only the decision of the BIA.

### III. Discussion

Dale argues that the BIA committed legal error in concluding that his guilty plea to attempted assault under § 120.10 was necessarily a plea to subsection (1) or (2)—both of which constitute crimes of violence—as opposed to subsection (3) or (4)—which do not. He concedes that New York law does not allow a conviction by a jury for an attempt crime where the principal crime has a *mens rea* requirement of recklessness or less, but he argues that New York courts routinely permit defendants to plead guilty to hypothetical or legally impossible crimes. *See, e.g.*, *People v. Foster*, 225 N.E.2d 200, 202 (N.Y. 1967) (finding no due process violation where a defendant pleaded guilty to a hypothetical crime); *People v. Griffin*, 166 N.E.2d 684, 686 (N.Y. 1960). The government filed no response to this allegation of legal error on the part of the BIA. It argues only that Dale failed to exhaust administrative remedies because he did not file a motion for the BIA to reconsider whether New York courts permit guilty pleas to legally impossible crimes. We turn first to the issue of jurisdiction.

### A.    Jurisdiction.

The government argues that Dale failed to exhaust administrative remedies where he admits that he did not file a motion requesting that the BIA

reconsider its conclusion that Dale was convicted of an aggravated felony under subsection (1) or (2) of § 120.10. Under its theory, Dale's challenge to the BIA's interpretation of New York law must necessarily be considered an unexhausted issue because the BIA reached its conclusion *sua sponte*, in absence of any argument from Dale as to whether New York courts permit pleas to "hypothetical crimes." Dale concedes that he could have filed a discretionary motion to reconsider under 8 C.F.R. § 1003.2, but he asserts that his failure to do so does not deprive this court of jurisdiction. He argues that his allegation of BIA error is not a "new issue," but merely a more "specific formulation" of the issue raised in his brief to the BIA—whether the IJ committed legal error in finding that he was convicted of an aggravated felony. He also contends that such a motion would be redundant where the BIA has already addressed and ruled upon the same issue he now brings before the court.

It is well-established that "[j]udicial review of a final removal order is available only if the applicant has exhausted all administrative remedies as of right." *Carranza-de Salinas v. Gonzales*, 477 F.3d 200, 206 (5th Cir. 2007) (citation and internal quotation marks omitted); *see also* 8 U.S.C. § 1252(d)(1). Although an alien is not required to re-articulate verbatim the precise arguments presented to the BIA, an alien nevertheless "fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the BIA—either on direct appeal or in a motion to reopen." *Id.* (citing *Wang v. Ashcroft*, 260 F.3d 488, 452 (5th Cir. 2001)).

To determine whether Dale was required to file a motion for reconsideration, we must discern whether Dale's allegation of BIA error presents a "new issue" that the BIA never had a chance to consider. A motion for reconsideration is "not generally required" to challenge an error in the BIA's opinion, but our recent decision in *Omari v. Holder* recognizes that such a motion is a jurisdictional prerequisite where petitioner asserts a wholly new

ground for relief arising only as a consequence of some error in the deportation proceedings. *Omari,* 562 F.3d 314, 319–21 (5th Cir. 2009). There, we distinguished this situation from general allegations of error in BIA proceedings, explaining that

> if a party disagrees with the BIA's resolution of an issue previously raised before the BIA, there is no need to reargue [that] issue in a motion for reconsideration. But where the BIA's decision itself results in a new issue and the BIA has an available and adequate means for addressing that issue, a party must first bring it to the BIA's attention through a motion for reconsideration.

*Id.* at 320.

Utilizing this distinction, we considered whether a petitioner raised a new issue where he argued, for the first time on appeal, that the BIA made "its own factual findings instead of properly deferring to those of the IJ." *Id.* We determined that the allegation of impermissible fact-finding, by definition, was a new "issue stemming from the BIA's act of decisionmaking, . . . one that neither party could have possibly raised prior to the BIA's decision." *Id.* at 320–21. Because this particular ground for relief came into existence only as a result of the BIA decision, we held that allegations of impermissible factfinding are within the class of "certain allegations of BIA error [that] must first be brought to the BIA in a motion for reconsideration." *Id.* at 320; *Sidabutar v. Gonzales*, 503 F.3d 1116, 1122 (10th Cir. 2007) (same); *see also Goonsuwan v. Ashcroft*, 252 F.3d 383, 386 (5th Cir. 2001) (holding that habeas petitioner was required to first file a motion to reopen where he sought habeas relief based on an allegation of ineffective assistance of counsel rendered in deportation proceedings ).

*Omari* stands in contrast to such cases in which a petitioner alleges BIA error in regard to the same ground for relief already presented to the BIA. In such instances, a petitioner need only "ma[ke] some concrete statement before the BIA to which [he] could reasonably tie [his] claims before this court." *Omari,*

562 F.3d at 322. So long as the petitioner has satisfied this requirement, no motion to reconsider is necessary despite subsequent variations in the depth of analysis a petitioner gives to an issue or changes in the scope of the argument. *See Hongyok v. Gonzales*, 492 F.3d 547, 550 (5th Cir. 2007) (noting that mere "semantic differences" will not deprive this court of jurisdiction)*; see Burke v. Mukasey*, 509 F.3d 695, 696 (5th Cir. 2007) (per curiam) (holding that the petitioner's argument to the BIA that his conviction for possession of stolen property did not qualify as an aggravated felony encompassed the narrower issue of whether his conviction was a "theft offense," which is an aggravated felony for the purpose of 8 U.S.C. § 1101(a)(43)(G)); *Carranza-de Salinas v. Gonzales,* 477 F.3d 200, 206–07 (5th Cir. 2007) (holding that a petitioner exhausted administrative remedies by presenting an issue in a "less developed" form to the BIA).

In *Carranza-de Salinas*, we held that the petitioner had exhausted her administrative remedies where she argued before both the BIA and this court that the BIA should not have ordered her deported without first allowing her to present evidence of her continued reliance on the then-repealed Illegal Immigration Reform and Responsibility Act § 212(c) despite a material modification in her theory of reliance. *See id.* In that case, the government advocated that the petitioner had failed to exhaust her administrative remedies where she abandoned her theory of reliance advocated before the BIA in favor of an unrelated, alternative theory after an interim decision foreclosed her original theory. *See id.* Despite this modification, we recognized that the proper inquiry was whether her theory—as modified—could be considered part of the argument she advanced before the BIA. We answered this question in the affirmative, finding that her argument before the BIA could be considered a "less developed form" of her new argument, as both ultimately asserted that petitioner had a right to present and have the agency consider her reliance on

the continued availability of § 212(c) relief. *See id*. The substitution of reliance theories did not impact jurisdiction because "the BIA clearly had the opportunity to address her [broader] claim that actual reliance by an alien on the continued availability of § 212(c) relief triggered an impermissible retroactive effect after *St. Cyr*." *Id*. at 207.

With these cases in mind, we compare Dale's arguments before the BIA with his arguments before this court to determine whether the BIA's decision resulted in a "new issue," or whether Dale is advancing an issue that has already been presented to the BIA. Before the BIA, Dale argued that "the Immigration Judge erroneously found that his conviction was a crime of violence and an aggravated felony under the act, because the statute in question should be considered to be 'divisible,' as criminalizing both conduct that does and conduct that does not qualify as an aggravated felony." In his brief in support of his petition for review, Dale presents his "statement of issue" as

> [w]hether the BIA erred in finding as a matter of law that due to the legal impossibility of attempted recklessness and of attempted felony assault, Petitioner must have been convicted under a subsection of a divisible statute amounting to a crime of violence, particularly where the government was not put to its burden to prove as a factual matter that Petitioner was convicted of a crime amounting to a crime of violence, and where New York courts routinely accept a guilty pleas for attempted recklessness and have evinced a willingness to accept guilty pleas for attempted felony assault?

Even at first glance, it is obvious that this case is not like *Omari* and *Goonsuwan*, in which the petitioners alleged wholly new grounds for relief which came about only as a result of factual circumstances arising during or as a result of the administrative proceedings. Rather, Dale disputes only the BIA's answer to the issue he previously raised before it—namely whether Dale was convicted

under § 120.10(1) or (2), the subsections of the divisible statute that define aggravated felonies.[2]

Further, although the argument Dale presented to the BIA is not identical to that which he raises in his petition for review, the arguments are sufficiently related to establish that Dale "presented [his] ground for relief to the administrative agency in the first instance." *Hongyok*, 492 F.3d at 550. We find this to be an easier case than *Carranza-De Salinas*, as Dale has not substituted one legal theory for another at any stage of proceedings. *See* 477 F.3d at 206–07. Rather, his ground for relief and its supporting theories have remained logically consistent throughout. Dale's fundamental claim is that § 120.10 is a divisible statute, and the government has not borne its burden of proving that Dale was convicted under a subsection of § 120.10 that defines an aggravated felony. His BIA argument focused on the government's failure to provide affirmative evidence that he pleaded guilty to subsection (1) or (2), but that argument logically encompassed the narrower argument, presented to this court, that pleas to subsections (3) and (4) are possible. Indeed, his critique of the government's evidentiary inadequacies would ring hollow but for that assumption. As Dale's broader argument to the BIA includes the more specific claim presented here, we conclude that he has presented a "concrete statement" to which "[he] could reasonably tie [his] claims before this court." *Omari*, 562 F.3d at 322.

Regardless of the degree of relation between Dale's argument before the BIA and his brief to this court, the government argues that administrative exhaustion is not satisfied until the BIA is given the opportunity to correct the

---

[2] We also note that the BIA's *sua sponte* determination that Dale could not have pleaded guilty to a "hypothetical crime" implicitly answers the precise question Dale raised before the BIA—whether the government had submitted sufficient evidence to prove he had been convicted under §120.10(1) or (2). If Dale could not legally plead guilty to the other two sections, any evidence that the government submitted demonstrating his conviction under §120.10 must necessarily be viewed as proof that he was convicted under those subsections that constitute an aggravated felony.

specific error in its interpretation of New York law. We disagree. Federal jurisdiction is not conditioned upon the petitioner affording the BIA a second bite at the apple to rid its opinion of any legal error; administrative exhaustion requires only that federal courts refrain from "'address[ing] an immigration issue until the appropriate administrative authority has had the opportunity to apply its specialized knowledge and experience to the matter.'" *Toledo-Hernandez v. Mukasey*, 521 F.3d 332, 334 (5th Cir. 2008) (quoting *Padilla v. Gonzales*, 470 F.3d 1209, 1214 (7th Cir. 2006)). "In cases where the BIA has previously ruled on an issue, we do not hold that in order to exhaust their administrative remedies for purposes of invoking federal court jurisdiction that petitioners must file a motion to reopen in order to have the agency reconsider the same issue." *Id.* at 336. In this instance, it is apparent that the BIA has ruled upon the question of whether New York Courts would permit a defendant to plead guilty to legally impossible crimes such as attempted reckless assault or attempted felony assault pursuant to § 120.10(3) and (4). As we are unable to discern any goal of administrative exhaustion that would be served by simply calling the BIA to ponder once again the very issue upon which it has already ruled, we hold that we have jurisdiction to consider Dale's petition for review.

## B.    *Ventura* Remand

Although Dale has exhausted administrative remedies and jurisdiction is otherwise proper, the government urges us to remand pursuant to *INS v. Ventura* for the BIA to decide the question whether New York law permits a person to plead guilty to attempting those crimes defined at § 120.10(3) and (4). *See Ventura*, 537 U.S. 12 (2002) (per curiam). We decline this invitation. *Ventura* provides that "a court of appeals should remand a case to an agency for a decision of a matter that statutes place primarily in agency hands." *Id.* at 16. This case presents no such matter. Although the BIA possesses expertise in

No. 08-60661

interpreting immigration regulations and applying those regulations to the facts of an immigration case, it brings no specialized knowledge and expertise to the issue at hand—the proper interpretation of New York criminal law. Indeed, "[n]o deference is owed to the BIA's conclusions of law" apart from the interpretation of immigration regulations. *Carranza-de Salinas*, 477 F.3d at 203–04. We therefore proceed to examine the merits of the BIA's legal conclusion.

## C.    Interpretation of New York Penal Law § 120.10

Dale argues that the BIA erred in concluding, as a matter of law, that Dale must have been convicted under § 120.10(1) or (2)—both of which constitute "crimes of violence" warranting removal—due to the legal impossibility of a conviction for attempted recklessness or attempted felony assault. We review the BIA's conclusion [3] *de novo*, owing no deference to the BIA's conclusion of law, which does not arise from the interpretation of an immigration regulation. *See id.*

We note at the outset that the government's brief, which encompassed only two pages of argument, provided no response to Dale's allegation that the BIA's legal ruling was incorrect. However, our review of New York law confirms that the BIA erred in precisely the manner Dale articulates. Although New York law recognizes attempt liability only for crimes that involve a *mens rea* of specific intent—as opposed to crimes of recklessness and crimes with no *mens rea* element such as felony assault—New York courts permit convictions by plea to hypothetical or legally impossible offenses such as attempted recklessness. To wit, a defendant cannot be tried and convicted of attempted reckless assault.

---

[3] As noted above, we review only the decision of the BIA because the BIA reached the same conclusion as the IJ without adopting his reasoning. *See Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997) (explaining that we have "authority to review only an order of the BIA, not the IJ, unless the IJ's decision has some impact on the BIA's decision.").

11

*See, e.g., People v. Williams*, 338 N.Y.S.2d 980, 982 (N.Y. App. Div. 1972) (overturning a jury conviction under §120.10(3) for attempted reckless assault because that subsection contained no element of intent); *People v. Campbell*, 72 N.Y.2d 602, 606 (N.Y. 1988); *People v. Foster*, 19 N.Y.2d 150, 152–53 (N.Y. 1967). However, New York courts have permitted defendants to plead guilty to crimes of attempted recklessness. *Torres v. McGrath*, 407 F. Supp. 2d 551, 561–62 (S.D.N.Y. 2006) (denying petitioner's habeas petition where he pleaded guilty to "attempted reckless endangerment in the first degree in violation of [New York] Penal Law §§ 110.00 and 120.25."). A number of other decisions reflect New York courts' willingness to accept guilty pleas to hypothetical crimes, including that of attempted felony assault. *See In re Maldonado*, 516 N.Y.S.2d 673, 674 (N.Y. App. Div. 1987) ("Like attempted felony murder, there is no such crime as attempted felony assault . . . . [but] [a] different result may be reached where the conviction of an attempt to commit a crime, itself not involving intent, is obtained by way of a plea of guilty." (citations and internal quotation marks omitted)); *see also People v. Guishard*, 789 N.Y.S.2d 332, 333 (N.Y. App. Div. 2005) (affirming plea conviction to attempted assault in the first degree although the crime was a "legal impossibility"); *People v. Barker*, 635 N.Y.S.2d 383, 384 (N.Y. App. Div. 1995) (sustaining plea conviction to the "non-existent crime" of attempted first-degree manslaughter, but noting that "a jury verdict convicting a person of that crime would be invalid.").

Despite the seeming logical inconsistency of permitting a defendant to plead guilty to a legally impossible crime, New York courts sustain such pleas on the ground that they are "sought by the defendant and freely taken as part of [the] bargain which was struck for the defendant's benefit." *Foster*, 19 N.Y.2d at 154. These courts recognize that it is often in the interest of defendants to "plead to a nonexistent crime in satisfaction of an indictment charging a crime with a heavier penalty" and thereby avoid risking a conviction for the more

No. 08-60661

serious crime even though a jury could not convict a defendant of a legally impossible crime. *People v. Martinez*, 611 N.E.2d 277, 812 (N.Y. 1993); *see also Guishard*, 789 N.Y.S.2d at 333 ("Although the crime of attempted assault in the first degree is a legal impossibility, a defendant may plead guilty to a nonexistent crime in satisfaction of an indictment charging a crime for which a greater penalty may be imposed."). Therefore, we conclude that New York courts would permit a defendant to plead guilty to such nonexistent crimes as would result had Dale pleaded guilty to the attempted violation of either § 120.10(3) or (4).

## CONCLUSION

In sum, we conclude that Dale has exhausted his administrative remedies and we may exercise jurisdiction to rule on his allegation of legal error in the BIA's determination. We further hold that the BIA erred as a matter of law in concluding that Dale could not legally plead guilty to an attempted violation of § 120.10(3) or (4). Accordingly, we GRANT the petition for review, VACATE the BIA's order, and REMAND for further proceedings consistent with this opinion.