# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-11276

United States Court of Appeals
Fifth Circuit

**FILED**

November 8, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GARY DON BOYD GRAVES,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, COSTA, and OLDHAM, Circuit Judges.

ANDREW S. OLDHAM, Circuit Judge:

Gary Don Boyd Graves pleaded guilty to one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). The district court sentenced him to 108 months' imprisonment followed by 10 years of supervised release. It also ordered Graves to pay the $100 special assessment as well as a $5,000 additional special assessment pursuant to the Justice for Victims of Trafficking Act of 2015. *See* 18 U.S.C. §§ 3013(a)(2)(A), 3014(a)(3). The additional $5,000 special assessment must be imposed on any non-indigent person who commits certain offenses, including offenses related to sexually exploiting children. *See id.* § 3014.

No. 17-11276

As part of his plea deal, Graves generally waived his right to appeal. Notwithstanding that waiver, Graves filed this appeal to challenge the $5,000 special assessment on the basis of his purported indigence. Whether Graves waived his right to challenge the special assessment is a close question. But it is one we need not answer. We instead resolve this appeal on the merits and hold § 3014 allows district courts to consider a defendant's future earning capacity when determining whether a defendant is indigent. Therefore, we conclude the district court did not err in imposing the $5,000 special assessment and affirm its judgment.

I.

On June 14, 2017, Graves was indicted for possessing pornographic images of pre-pubescent children. Because the magistrate judge found that he was "financially unable to obtain counsel," the court appointed a public defender. After consulting with his appointed counsel, Graves decided to accept responsibility for his crime and pleaded guilty to possessing child pornography that included images of children under the age of twelve.

In the plea agreement, the Government and Graves agreed to minimum and maximum penalties for Graves's crime. The possible penalties included: (a) imprisonment; (b) a fine; (c) a term of supervised release; (d) a mandatory special assessment of $100 and an additional mandatory special assessment of $5,000 if the court found Graves not indigent; (e) restitution; (f) costs of incarceration and supervision; and (g) forfeiture of property. In the plea agreement, Graves acknowledged that "the actual sentence imposed (so long as it is within the statutory maximum) is solely in the discretion of the Court." And Graves explicitly waived his right "to appeal the conviction, sentence, fine and order of restitution or forfeiture in an amount to be determined by the district court." He did, however, reserve his right to appeal "a sentence exceeding the statutory maximum punishment."

No. 17-11276

In September 2017, after the plea agreement was signed, the probation officer prepared a presentence investigation report ("PSR"). It included information about Graves's employment history and current financial status. Because Graves had failed to provide requested information regarding his finances, the probation officer relied on Graves's June 2017 financial affidavit in evaluating his financial condition. Based on that information, the PSR determined Graves had no substantial assets, $874 in debt, and a monthly cash flow of $50 after accounting for expenses. The PSR concluded that any fine or $5,000 assessment should be imposed based on Graves's future earning capacity because he was employable. Graves disagreed. In his objections to the PSR, Graves argued the court must consider only his financial condition at the time of his sentencing, not his potential future earnings, in determining whether to assess him $5,000.

Graves subsequently submitted additional documents showing he had an income of $700 a month and up to $245 in monthly discretionary income. As a result, the probation officer filed an addendum to the PSR, which updated Graves's financial information and reasoned that, based on Graves's current income, he "could pay a $5,000 assessment, in-full, in less than 2 years." The addendum also concluded that Graves would likely have an increased earning potential after his release from prison. Graves continued to disagree.

At the sentencing hearing, Graves argued that he was "most certainly indigent" and urged the district court not to impose the $5,000 special assessment. The Government countered that the court should consider Graves's future earning capacity in assessing his indigence. Pointing to Graves's education, which included some college courses, his employment history, and the fact that he is able bodied, the Government argued Graves would have the ability to make payments in the future. The district court agreed. It found that Graves "is not indigent based upon his potential future

3

No. 17-11276

earning capacity" and imposed the $5,000 additional special assessment. Graves preserved his objection to the special assessment. This appeal followed.

## II.

As with other legal issues, we review the effect of an appeal waiver de novo. *United States v. Walters*, 732 F.3d 489, 491 (5th Cir. 2013). We usually employ a two-step inquiry, asking: (1) "whether the waiver was knowing and voluntary" and (2) "whether, under the plain language of the plea agreement, the waiver applies to the circumstances at issue." *United States v. Keele*, 755 F.3d 752, 754 (5th Cir. 2014). In this case, however, neither party contests the knowing and voluntary nature of the waiver. So we skip straight to step two—whether the waiver bars the present appeal.

Graves's appeal waiver expressly preserves his right to appeal "a sentence exceeding the statutory maximum punishment." He argues the district court was not statutorily authorized to impose the $5,000 special assessment because Graves is "an[] []indigent person" under 18 U.S.C. § 3014(a)(3), and therefore, the sentence exceeds the statutory maximum. To support his reading of the statutory-maximum exception to his appeal waiver, Graves relies on appeals challenging the legality of restitution orders. Under our precedent, an appeal waiver with a statutory-maximum exception does not foreclose challenges to restitution awards that are unsupported by evidence of the victims' losses. *See United States v. Chem. & Metal Indus., Inc.*, 677 F.3d 750, 752 (5th Cir. 2012); *see also United States v. Winchel*, 896 F.3d 387, 389 (5th Cir. 2018) (determining an appeal fell within a statutory-maximum exception when "a court orders a defendant to pay restitution under § 2259 without determining that the defendant's conduct proximately caused the victim's claimed losses" because "the amount of restitution necessarily exceeds the statutory maximum"); *Keele*, 755 F.3d at 756 (noting "that, while defendant has made no such argument on appeal herein, an 'in excess of the statutory

maximum' challenge, if properly raised on appeal, would not be barred by an appeal waiver" (quoting *Chem. & Metal Indus., Inc.*, 677 F.3d at 752)). Arguably, appeals challenging restitution orders are analogous to appeals challenging special assessments. After all, both types of appeals turn on whether a statute authorizes the district court to demand money from the defendant—and hence whether the district court exceeded the "statutory maximum" in doing so.

The Government counters that a special assessment is more analogous to a "fine," which falls within the plain terms of Graves's appeal waiver. The appeal waiver provided: "The defendant waives the defendant's rights . . . to appeal the conviction, sentence, [or] *fine*." The Government further argues that, even if a special assessment were analogous to a restitution order, the appeal waiver would still apply unless the record contained *no* evidence to support it. *See Chem. & Metal Indus., Inc.*, 677 F.3d at 752 (appeal waiver does not bar challenge to restitution order where Government concedes "there was no finding of loss"). By contrast here, the Government observes, ample record evidence supports the district court's finding that Graves would be able to pay the $5,000 special assessment based on his future earning capacity.

Fortunately, we do not need to resolve the appeal-waiver question here because this case is easily resolved on the merits. *See United States v. Childers*, No. 17-40621, 2018 WL 5259393, at *1 (5th Cir. Oct. 19, 2018) (per curiam) (denying motion for summary dismissal of a challenge to the $5,000 special assessment when the defendant's claim would fail even if it was not barred by the appeal waiver); *United States v. Smith*, 528 F.3d 423, 424 (5th Cir. 2008) (declining "to address the issue of whether a general appeal waiver bars review of a restitution order when the plea agreement does not discuss restitution" because the "appeal is more easily resolved on the merits").

No. 17-11276

## III.

Whether Graves is "a[] non-indigent person" is a factual question we review for clear error. *United States v. Streaty*, 735 F. App'x 140, 140 (5th Cir. 2018) (per curiam). Whether the district court applied the correct legal standard in assessing Graves's non-indigence, however, is a question of law we review de novo. *Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Tex., Inc.*, 343 F.3d 355, 358 (5th Cir. 2003).

### A.

#### 1.

"We start, of course, with the statutory text." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006). "Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *Id.* Here the statutory text provides in relevant part:

> [I]n addition to the assessment imposed under section 3013, the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under . . . chapter 110 (relating to sexual exploitation and other abuse of children) . . . .

18 U.S.C. § 3014(a)(3). The parties focus our textual exegesis on one phrase— "any non-indigent person"—and ask us to decide whether district courts may consider future earning capacity in determining non-indigence in this context.

They can. That is so for three reasons.

First, the ordinary meaning of "indigent" includes a forward-looking assessment of the defendant's means. The word includes someone who is presently "[w]anting," "lacking," or "destitute"; but it also includes someone who is "[d]estitute of . . . *means* of comfortable subsistence." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1266 (2d ed. 1954) (emphasis added). "Means" refers to a person's capabilities—whether a person has or lacks the *capacity* to earn subsistence. The ordinary meaning of "indigent" therefore includes both

No. 17-11276

someone who is poor today and someone who lacks the means to earn the necessaries of life in the future.

Second, "[t]ext may not be divorced from context." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 356 (2013); *see also* ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012). Here, the statutory context shows that a district court's decision to impose the assessment is forward-looking to the defendant's future ability to pay.

Section 3014 mandates "the court *shall* assess an amount of $5,000 on any non-indigent person" convicted of certain offenses, and the assessments shall be used to provide services to trafficking victims. 18 U.S.C. § 3014(a), (c), (h) (emphasis added). By denying district courts discretion to impose the $5,000 additional special assessment, Congress made clear the assessment is a mandatory part of the sentence for an enumerated offense. *See Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001) ("The word 'shall' is mandatory in meaning.").

Not only must the special assessment be imposed today, the responsibility to pay it also persists well into the future. To increase the possibility the assessments would be collected and used to help victims, Congress stipulated the obligation to pay the assessment would continue for twenty years after the release from imprisonment or the entry of judgment, whichever is later. *See* 18 U.S.C. §§ 3014(g), 3613(b).[1] The duration of that statutory obligation further underscores that a district court must impose the assessment unless it finds the defendant could not pay it today—or at any point for the next twenty years.

---

[1] In contrast, the obligation to pay the $100 special assessment "ceases five years after the date of the judgment." 18 U.S.C. § 3013(c).

As if that were not enough, Congress also directed the Government to collect the $5,000 special assessment like a fine. *See* 18 U.S.C. § 3014(f) ("The amount assessed under subsection (a) shall . . . be collected in the manner that fines are collected in criminal cases."). And a defendant's future earning capacity is relevant to determining indigence for criminal fines. For example, the Federal Sentencing Guidelines provide courts "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is *not likely to become able to pay* any fine." U.S.S.G. § 5E1.2(a) (emphasis added). Accordingly, when determining what fine amount to impose, courts may "consider the defendant's ability to pay in light of his earning capacity and financial resources." *United States v. Altamirano*, 11 F.3d 52, 53 (5th Cir. 1993). In this context—a mandatory assessment, collectable for 20 years, treated like a fine—a district court's indigency finding should include consideration of the defendant's future ability to pay.

Third, our reading of the phrase "any non-indigent person" in § 3014 comports with that of our sister circuits. *See United States v. Janatsch*, 722 F. App'x 806, 811 (10th Cir. 2018) ("[T]he district court here did not err in concluding that [the defendant] would have the ability to pay the special assessment in the future."); *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017) (concluding, "that in the context of § 3014 indigence determinations, an analysis of both a defendant's current financial situation and his ability to pay in the future is appropriate in determining his 'non-indigent' status"); *United States v. Strange*, 692 F. App'x 346, 349 (9th Cir. 2017) (concluding "the district court properly took into account that [the defendant] was 'able-bodied'" and affirming its imposition of the $5,000 special assessment). Graves offers no argument that would justify creating a circuit split on this issue. *See Alfaro v. Comm'r of Internal Revenue*, 349 F.3d 225, 229 (5th Cir. 2003) ("We are always chary to create a circuit split.").

No. 17-11276

2.

Graves argues only that indigency must be determined once and for all at the time of sentencing—a single snapshot of the defendant's bank account and employment.  But this interpretation ignores the statutory context that informs the meaning of "non-indigent."  As discussed above, the statutory context demonstrates the assessment of a defendant's financial condition should consider future earning capacity, especially in light of the fact that the statute authorizes the payment obligation to last for twenty years after judgment.  *See* 18 U.S.C. § 3014(g).

Given that text may never be taken out of context, it is obviously true the word "indigent" could carry different meanings in different contexts.  As Justice Goldberg has observed, indigence "must be conceived as a relative concept" and defined in light of the context or "with reference to the particular right asserted."  *Hardy v. United States*, 375 U.S. 277, 289 n.7 (1964) (Goldberg, J., concurring;) *see also* 7 OXFORD ENGLISH DICTIONARY 868 (2d ed. 1989) (defining "indigent" by reference to something else—"falling short of the proper measure or standard").  Accordingly, when evaluating whether a defendant is indigent and should be allowed to proceed in forma pauperis, a court "assesses a defendant's *immediate ability* to pay because 'any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him.'"  *Kelley*, 861 F.3d at 800 (emphasis added) (quoting *Martinez v. Ryan*, 566 U.S. 1, 12 (2012)).

But when evaluating whether a defendant is indigent for purposes of his ability to pay $5,000 over the span of twenty years, it would be nonsensical for a court to limit itself to considering only a defendant's immediate ability to pay. *See id.* at 801 ("Because the special assessment under § 3014 deals with sentencing-phase considerations, the indigence analyses of similar post-conviction assessments are more helpful than the analysis used for

No. 17-11276

determining IFP status or appointed counsel."); *cf. United States v. Lewis*, 104 F.3d 690, 694 (5th Cir. 1996) (per curiam) ("In determining an amount of restitution to be paid, the district court considers not only a defendant's present financial resources, but also his future ability to pay.").

B.

Because we conclude the district court applied the correct legal standard in assessing Graves's indigence, Graves must show the district court clearly erred by finding he was not indigent. He fails to make this showing.

The district court found Graves was non-indigent based on evidence he (1) took accelerated placement courses in high school, obtained his GED, and briefly attended college; (2) had a wide range of vocational skills; (3) had a long history of employment; (4) had previously earned $40,000 annually; and (5) was able bodied. Graves does not argue that any of these factual findings are wrong, much less clearly erroneous.[2] Nor can Graves argue, in light of our holding above, these facts are legally irrelevant.

Graves likewise cannot argue these fact findings are irreconcilable with the magistrate judge's earlier determination that Graves was financially unable to obtain counsel. *See United States v. Perez*, 693 F. App'x 364, 365 (5th Cir. 2017) (per curiam) ("Contrary to [the defendant's] contention, a conclusion of non-indigency is not precluded by other orders entered in the case that depended on financial status."). When determining whether a defendant is unable to afford counsel, a court considers "a defendant's immediate ability to

---

[2] Graves argues only that the district court's non-indigency finding was "implausible" based on the income reported in the PSR and PSR addendum. According to these documents, Graves's income while on pre-trial release was between $700 and $1,000 a month. Graves argued that the evidence thus showed his income fell below the federal poverty level of $12,060 for an individual. Once again, this argument ignores that the district court could consider Graves's future earning capacity. And, given that Graves previously earned $40,000 a year, it was not unreasonable for the district court to conclude he could earn a higher income and that he therefore was not indigent.

No. 17-11276

pay" and bases its decision on preliminary financial information. *Kelley*, 861 F.3d at 800; *see Perez*, 693 F. App'x at 365 (explaining that "a magistrate judge's analysis of preliminary financial information, when undertaking the task of ensuring [the defendant's] Sixth Amendment right to counsel, [does not] bar[] a later conclusion of non-indigency based on the more revealing information about [the defendant's] total net worth given in the presentence report"). In contrast, when assessing whether a defendant is unable to pay a $5,000 special assessment, a court considers the defendant's current and future financial condition and bases its decision on the additional information provided in a PSR. That Graves was entitled to appointed counsel thus does not undermine the district court's later finding that he was not indigent.

The district court's decision not to impose a separate fine of $25,000 to $250,000 is similarly reconcilable with its decision to impose the $5,000 special assessment. It should go without saying that a defendant may not have the same ability to pay $5,000 as he would have to pay five to fifty times that amount. *See Perez*, 693 F. App'x at 365 (rejecting a defendant's argument "that the non-imposition of a fine impacts the additional special assessment decision, given that the fine range of $50,000 to $250,000 vastly exceeds the sum of the additional special assessments"). Accordingly, none of Graves's arguments leaves us "with the definite and firm conviction that a mistake has been made." *Cordova-Soto*, 804 F.3d at 718. We therefore find no clear error in the district court's conclusion that Graves is non-indigent under § 3014.

\* \* \*

Because the district court applied the correct legal standard and did not clearly err in finding Graves is "a[] non-indigent person" under 18 U.S.C. § 3014, the district court's judgment is AFFIRMED.

11