# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 18, 2025

Lyle W. Cayce
Clerk

No. 24-60215

W. Blake Vanderlan, *Medical Doctor*, *Relator*,

*Plaintiff—Appellant*,

*versus*

United States of America,

*Plaintiff—Appellee*,

*versus*

Jackson HMA, L.L.C., *doing business as* Central Mississippi Medical Center, *also known as* Merit Health Central - Jackson,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:15-CV-767

Before Wiener, Stewart, and Southwick, *Circuit Judges*.
Carl E. Stewart, *Circuit Judge*:

Not every fight is ours to finish. This case concerns power—who holds it and how it is exercised. Under the False Claims Act (the "FCA"),

No. 24-60215

Congress deputized private individuals—relators—to aid in the fight against fraud. The government, however, retains the right to commandeer a relator's case and, if it so chooses, dismiss it. That is what happened here. And the district court found no reason to stand in its way.

Dr. Blake Vanderlan, the relator in this case, insisted that he was owed an evidentiary hearing. The district court disagreed, relying on *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419 (2023), where the Supreme Court confirmed the government's broad discretion to dismiss *qui tam* actions. For the following reasons, we AFFIRM the district court's judgment.

## I.

### A.

In 1863, congressional investigations exposed rampant fraud in military contracting. War profiteers billed the federal government for phantom goods, overcharged for supplies, and exploited wartime procurement. *See United States v. McNinch*, 356 U.S. 595, 599 (1958) (explaining that congressional testimony "painted a sordid picture of how the United States had been billed for nonexistent or worthless goods, charged exorbitant prices for goods delivered, and generally robbed in purchasing the necessities of war"). Congress responded with the FCA to stop the plunder and "protect the funds and property of the [g]overnment." *Rainwater v. United States*, 356 U.S. 590, 592 (1958). That statute empowers relators to enforce its terms by suing "for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). Such suits were a staple of early American law. *See Adams v. Woods*, 6 U.S. (2 Cranch) 336, 341 (1805) (noting

2

that "[a]lmost every" penal statute could have been enforced this way).[1] They are known as *qui tam* actions, named for the Latin phrase meaning "who as well for the king as for himself sues in this matter." *Qui Tam Action*, Black's Law Dictionary (12th ed. 2024).

The injury, a relator asserts in a *qui tam* action, belongs exclusively to the government. *Polansky*, 599 U.S. at 425 (internal citation omitted). The government, moreover, is the "real party in interest" in a *qui tam* suit. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009). A *qui tam* suit alleges both an injury to the government's "sovereignty arising from violation of its laws" and an injury to its "proprietary [interest] resulting from [an] alleged fraud." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). A relator more or less acts as the "statutorily designated agent of the United States . . . and [] the relator's bounty is simply the fee he receives *out of the United States' recovery* for filing and/or prosecuting a successful action on behalf of the [g]overnment." *Id.* at 772 (emphasis in original); *see also* § 3730(d) (declaring that if successful, a relator receives a bounty, but the government takes the larger share).

The statutory framework confirms the government's control over *qui tam* litigation. Under § 3730(c)(1), when the government proceeds with the action, it "shall have the primary responsibility for prosecuting the action" and is "not [] bound by an act of the [relator]." The relator may continue as a party—filing motions and conducting discovery—but only "subject to the limitations set forth in [§ 3730(c)(2)]." § 3730(c)(1).

---

[1] Senator Jacob M. Howard, the senator from Michigan who introduced the bill, explained that the *qui tam* provision was based on the "old-fashioned idea of holding out a temptation . . . which is the safest and most expeditious way ever discovered of bringing rogues to justice." Cong. Globe, 37th Cong., 3d Sess. 956 (Feb 14, 1863).

No. 24-60215

Section 3730(c)(2) defines those limitations. Subsection (c)(2)(A) gives the government the right to dismiss the action over the relator's objection after notice and an opportunity for a hearing. Subsection (c)(2)(B) allows the government to settle the case, despite the relator's objections, so long as the court finds the settlement fair and reasonable. Subsections (c)(2)(C) and (c)(2)(D) further restrict the relator's participation if it interferes with the government's case or imposes an undue burden on the defendant. Section 3730(c)(4) applies "[w]hether or not the Government proceeds." It allows the government to stay discovery if it would interfere with a related investigation or prosecution. In sum, the statutory scheme evinces that the government retains ultimate authority over *qui tam* litigation.

**B.**

Vanderlan, a physician at a hospital operated by Jackson HMA, LLC ("Jackson HMA") alleged that the hospital systematically violated the Emergency Medical Treatment and Labor Act ("EMTALA"). He reported these violations to the Department of Health and Human Services, prompting an investigation by the Center for Medicare and Medicaid Services ("CMS"). CMS confirmed that Jackson HMA had violated EMTALA, citing 42 C.F.R. §§ 489.20 and 489.24, and referred the matter to the Office of Inspector General (the "OIG") to assess potential civil monetary penalties. CMS also notified Vanderlan of the violation with a form letter that suggested he consider EMTALA's civil enforcement provisions. EMTALA, however, authorizes private civil actions only for personal injury or financial losses suffered by other medical facilities. 42 U.S.C. § 1395dd(d)(2)(A)–(B).

The OIG and Jackson HMA engaged in settlement discussions over potential civil monetary penalties. No penalties were imposed, no settlement was reached, and administrative enforcement proceedings were stayed

4

pending this litigation. The government informed Vanderlan that any potential settlement with Jackson HMA would be narrow in scope.

Vanderlan sued Jackson HMA, alleging five FCA violations, including a retaliation claim under § 3130(h). He sought injunctive relief to block any settlement between Jackson HMA and the government. The government investigated his *qui tam* claims and declined to intervene.

The case dragged on for six and a half years. After unsealing the case, Vanderlan moved to involuntarily join the United States as a party and sought a preliminary injunction against settlement. He later withdrew the joinder motion, and the district court denied his injunction request. He then moved for partial summary judgment, leading to extended discovery, which he reopened at least five times. During these proceedings, the district court severed Vanderlan's retaliation claims.

The government eventually moved to dismiss the *qui tam* claims with prejudice as they related to Vanderlan but without prejudice as to itself. In support of its motion to dismiss, the government offered several exhibits, including Vanderlan's and Jackson HMA's initial disclosures and a September 27, 2018 letter from counsel for Jackson HMA, Jack Selden (the "Selden Letter"). The government cited the Selden Letter as support for its position that Jackson HMA was hesitant to settle the administrative EMTALA investigation with the OIG while the *qui tam* suit was still pending because an administrative settlement could disadvantage Jackson HMA in the *qui tam* litigation.

The government argued that Vanderlan's suit would interfere with administrative settlement negotiations and lacked merit. The district court granted dismissal based on written filings but did not specify whether it did so with or without prejudice. After reconsidering in light of intervening

precedent, the court reaffirmed its decision post-hearing but again failed to specify the nature of the dismissal. The court entered a separate Rule 58 judgment, which similarly omitted any mention of prejudice. Vanderlan then appealed.

## II.

We review a motion for voluntary dismissal for an abuse of discretion. *See Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 509 (5th Cir. 2007); *see also Polansky, Inc.*, 599 U.S. at 438 (noting that a "district court's Rule 41 order is generally reviewable under an abuse-of-discretion standard," but declining to decide a standard of review). We review *de novo* the district court's statutory interpretation of the FCA. *See United States v. Eli Lilly & Co., Inc.*, 4 F.4th 255, 264 (5th Cir. 2021); *Dresser v. Meba Med. & Benefits Plan*, 628 F.3d 705, 708 (5th Cir. 2010).

## III.

Several issues are raised on appeal. In turn, we address (A) whether we have appellate jurisdiction, (B) whether the district court erred in denying Vanderlan an evidentiary hearing, (C) whether the district court had discretion in denying or granting the government's § 3730(c)(2)(A) motion, and (D) whether the district court appropriately applied the standard for dismissing, rather than for approving settlement of, a *qui tam* action.

## A.

In *Polansky*, the Supreme Court held that district courts must apply the legal standards of Federal Rule of Civil Procedure 41 when ruling on a § 3730(c)(2)(A) motion. *See* 599 U.S. at 437. But the Court did not address how these standards affect appellate jurisdiction. The parties here do not exactly raise the issue, either. To ensure ourselves of our jurisdiction, we take it up *sua sponte*. *See Ashley v. Clay Cnty.*, 125 F.4th 654, 659 (5th Cir. 2025).

No. 24-60215

"Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)). Without jurisdiction, we "cannot proceed at all in any cause." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). We have jurisdiction over "all final decisions of the district courts of the United States." 28 U.S.C. § 1291. A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute judgment." *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 204 (1999) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521–22 (1988)).

A voluntary dismissal may change our jurisdictional analysis. Under Rule 41(a)(1), a plaintiff may dismiss an action "without a court order" by filing a notice of dismissal before the opposing party serves an answer or a motion for summary judgment. FED. R. CIV. P. 41(a)(1). Such dismissals are presumed to be without prejudice unless the notice states otherwise. *Id.* "[T]here is no final decision if a plaintiff voluntarily dismisses a defendant without prejudice, because the plaintiff 'is entitled to bring a later suit on the same cause of action.'" *Williams v. Seidenbach*, 958 F.3d 341, 343 (5th Cir. 2020) (en banc) (quoting *Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298, 302 (5th Cir. 1978)); *see also CBX Res., LLC v. ACE Am. Ins. Co.*, 959 F.3d 175, 175–76 (5th Cir. 2020) (holding that because the plaintiff dismissed its claims without prejudice and those claims were not resolved on the merits, it was "entitled to bring a later suit on the same cause of action," and thus, "there [was] not yet a final appealable judgment" (quoting *Ryan*, 577 F.3d at 302 and then citing *Marshall v. Kansas City S. Ry. Co.*, 378 F.3d 495, 500 (5th Cir. 2004)).

Here, Vanderlan suggests that the district court acted under Rule 41(a)(2). But the government's voluntary dismissal falls under Rule 41(a)(1), as it moved to dismiss before Jackson HMA answered or sought summary

7

No. 24-60215

judgment. *See* FED. R. CIV. P. 41(a)(1). In its § 3730(c)(2)(A) motion, the government moved to dismiss the claims *with prejudice* as to Vanderlan but *without prejudice* as to itself.[2] Because under Rule 41(a)(1), we look to the government's notice of dismissal to determine finality, we conclude that the dismissal was with prejudice as to Vanderlan. *See id.* That resolves the jurisdictional question. The dismissal was final, and we have appellate jurisdiction under § 1291.

**B.**

Having ensured ourselves of our jurisdiction, we now address whether the district court erred in denying Vanderlan an evidentiary hearing. Vanderlan argues that the FCA requires an evidentiary hearing when the government seeks voluntary dismissal of a relator's claim. In his view, the district court lacked discretion to interpret the Selden Letter without first holding such a hearing. He says that the government must offer "something more" before terminating the action. He next argues that Rule 41(a)(2) affords him procedural protections such as an evidentiary hearing. For his due process theory, he asserts that the government conceded a relator's property interest in *qui tam* litigation and, by extension, acknowledged that any motion to dismiss must satisfy a "constitutional baseline." Vanderlan

---

[2] Even under the presumption for silent district court orders or the government's motion, the dismissal was without prejudice as to the government. FED. R. CIV. P. 41(a)(1)(B), (2). But because the statute of limitations has run, it is effectively with prejudice for jurisdictional purposes. *See Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 417 (5th Cir. 2006). Though we have not explicitly held that a time-barred without-prejudice dismissal qualifies as final, our unpublished decisions and an en banc concurrence have recognized as much. *See McGrew v. McQueen*, 415 F. App'x 592, 594 (5th Cir. 2011) (unpublished); *Williams v. Seidenbach*, 958 F.3d 341, 359 (5th Cir. 2020) (Willett, J., concurring). The rule holds unless the parties collusively agree to waive the statute of limitations upon appeal. No such agreement exists here. *See In re Mun. Stormwater Pond Coordinated Litig.*, 73 F.4th 975, 979–81 (8th Cir. 2023) (holding that collusive waiver destroys appellate jurisdiction).

No. 24-60215

frames his due process theory through the lens of *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), contending that each factor supports his demand for an evidentiary hearing. We reject his arguments.

Courts of appeals, since *Polansky*, have routinely read subparagraph (c)(2)(A) in the same way: "hearing" only requires a hearing on the briefs. *See United States ex rel. Doe v. Credit Suisse AG*, 117 F.4th 155, 162 (4th Cir. 2024); *Brutus Trading, LLC v. Standard Chartered Bank*, No. 20-2578, 2023 WL 5344973, at *2–3 (2d Cir. Aug. 21, 2023) (unpublished). When Congress wants a live hearing, it says so. *See, e.g.*, *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 239 (1973) (explaining that agencies may conduct "hearings" through written submissions unless Congress expressly requires a hearing "on the record"). Congress said nothing like that here. *See* § 3730(c)(2)(A). We see no reason to split from our sister circuits without persuasive grounds. *See United States v. Graves*, 908 F.3d 137, 142 (5th Cir. 2018). None exist here.[3] Thus, subparagraph (c)(2)(A) only requires a hearing on the briefs.

Here, the district court reconsidered its ruling, allowed multiple rounds of briefing, held a live hearing where Vanderlan presented his argument, and gave him the chance to submit evidence. Section 3730(c)(2)(A) and relevant precedent require no more. *Credit Suisse* and *Brutus Trading* upheld far less, requiring only written submissions to satisfy the hearing requirements. *See* 117 F.4th at 162; 2023 WL 5344973, at *2–3.

---

[3] Vanderlan thinks otherwise. He relies on our decision in *Eli Lilly*, 4 F.4th at 255. But that decision predates *Polansky* and does not carry the weight that he assigns it. There, the court did not address the then-entrenched circuit split over the § 3730(c)(2)(A) dismissal standard. It assumed without deciding that the more stringent standard applied and held that the government satisfied it. *See id.* at 267. The court also found that the relator's chance to present evidence at a live hearing was sufficient to meet any hearing requirement that might apply, without defining what such a hearing must entail. *See id.* at 266–67. Simply put, *Eli Lilly* does not support Vanderlan's position that an evidentiary hearing is required here.

The district court's process exceeded what those cases required. We, therefore, hold that the district court did not err in denying Vanderlan an evidentiary hearing under § 3730(c)(2)(A).

Vanderlan also posits that he was entitled to Rule 41(a)(2)'s safeguards, as the district court applied that standard. But the legal standard does not shift based on how the district court analyzed the motion. The government's § 3730(c)(2)(A) motion falls under Rule 41(a)(1), not Rule 41(a)(2). *See supra* Part III.A. The district court made that explicit: "Vanderlan's case falls under Rule 41(a)(1)." True, the court observed that "a straight-up Rule 41(a)(1) voluntary dismissal procedure would not satisfy § 3730(c)(2)(A)." But it applied Rule 41(a)(2)'s higher standard only because the government met it—not because it was required to do so. Nothing in precedent supports transforming a Rule 41(a)(1) dismissal into a Rule 41(a)(2) dismissal simply because the court applied a stricter standard voluntarily.

Because the government's motion was a Rule 41(a)(1) voluntary dismissal, Vanderlan was not entitled to Rule 41(a)(2)'s safeguards, assuming any exist in this context. His reliance on *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314 (5th Cir. 2002) is misplaced. In *Elbaor*, we held that when "faced with a Rule 41(a)(2) motion the district court should first ask whether an unconditional dismissal will cause the non-movant to suffer plain legal prejudice." *Id.* at 317. That case involved Rule 41(a)(2), which requires a court order. Rule 41(a)(1) does not. *Elbaor* is inapposite here.

That brings us to due process. Vanderlan argues that the district court erred in denying him an evidentiary hearing because it did not consider whether the Due Process Clause required one. Specifically, he argued that the district court failed to apply the *Mathews* factors. But Vanderlan never argued in the district court that those factors weighed in favor of an

evidentiary hearing. He instead argued the following in his Supplemental Motion to Reconsider:

> [*sic*] Due process under the Federal Constitution has a procedural component. Procedural due process "considers not the justice of a deprivation, but only the means by which the deprivation was effected." *Bowlby v City of Aberdeen*, 681 F.3d 215, 222 (5th Cir 2012) (quoting *Caine v Hardy*, 943 F.2d 1406, 1411 (5th Cir 1991)). Therefore, the injury "is not the liberty or property that was taken from the plaintiff, but the fact that it was taken without sufficient process." *Bowlby*, 681 F.3d at 222. The "fundamental requirement" of procedural due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v Eldridge*, 424 US 319, 332–33 (1976) (citations and internal quotations omitted). As discussed above, in *Polansky*, the Government conceded a relator's right to procedural due process, i.e., a hearing to determine whether the Government could dismiss a *qui tam* case and, thereby, extinguish the relator's property interest.

That is all. His principal Motion to Reconsider is similarly lacking. There, he never invoked the *Mathews* factors or explained how they warranted an evidentiary hearing. Thus, we consider the argument forfeited. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the argument on appeal." (internal citation omitted)).

For these reasons, we hold that the district court did not err in denying an evidentiary hearing. Thus, it did not abuse its discretion. *See Hyde*, 511 F.3d at 509.

## C.

We now consider whether the district court erred in granting the government's § 3730(c)(2)(A) motion. Vanderlan says it did. The

government disagrees, arguing that the court, under Rule 41(a)(1), had no adjudicatory role in disposing of a pre-answer (c)(2)(A) motion and no discretion to deny dismissal absent a claim that the Constitution forbids it. We agree with the government.

The FCA permits the government to dismiss a *qui tam* action "notwithstanding the objections" of the relator, so long as it provides notice and an opportunity for a hearing. *See* § 3730(c)(2)(A). *Polansky* confirmed that district courts apply Rule 41's standards in addressing these motions. *See* 599 U.S. at 437. The Court further emphasized that even post-answer, post-motion for summary judgment (c)(2)(A) motions "will satisfy Rule 41 in all but the most exceptional cases," and courts should afford "substantial deference" to the government's decision. *Id.* Given that *qui tam* actions exist "on behalf of and in the name of the [g]overnment" and allege injury solely to the government, the Court made clear that district courts "should think several times over before denying" dismissal. *Id.* at 437–38. Still, *Polansky* dealt with Rule 41(a)(2), which applies after an answer or motion for summary judgment and requires a court order. In dicta, the Court addressed pre-answer and pre-motion for summary judgment dismissals under Rule 41(a)(1):

> The Court of Appeals briefly addressed the purpose of a hearing when dismissal is sought before an answer is filed. In that context, Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role. So what is the court supposed to do at the hearing the FCA requires? The Third Circuit suggested that Rule 41's standards "rest atop the foundation of bedrock constitutional constraints on Government action." So a hearing, whether pre- or post-answer, might inquire into allegations that a dismissal "violate[s] the relator's rights to due process or equal protection." But because Polansky has not raised a claim of that sort, we do not consider the circumstances in which, or

procedures by which, a court should find the Constitution to prevent the Government from dismissing a *qui tam* action.

*Id.* at 436 n.4 (internal citations omitted).

The Fourth Circuit—the only court of appeals to have issued a published opinion on this issue—embraced this language in *Credit Suisse*, 117 F.4th at 161. It reasoned that because *Polansky* required district courts to afford substantial deference to Rule 41(a)(2) motions, an even greater degree of deference applies to Rule 41(a)(1) motions. *See id.* As we have said before, we do not create an unnecessary circuit split absent compelling reasons. *See Graves*, 908 F.3d at 142. No such reasons exist here.

Our sister circuit properly adhered to *Polansky*'s dicta, which "is entitled to great weight." *Daves v. Dallas Cnty.*, 64 F.4th 616, 650 (5th Cir. 2023) (en banc) (Southwick, J., concurring in judgment) (quoting *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 330 n.21 (5th Cir. 2022)). It also acknowledged the fundamental distinction between Rule 41(a)(1) and Rule 41(a)(2). The former allows dismissal without a court order. *See Credit Suisse*, 117 F.4th at 161. "We find the reasoning of the [*Credit Suisse*] [c]ourt persuasive and see no need to create a circuit split on this issue." *Carranza-De Salinas v. Gonzales*, 477 F.3d 200, 208 (5th Cir. 2007). Because the government's § 3730(c)(2)(A) motion falls under Rule 41(a)(1), *see supra* Part III.A, it warrants even greater deference than if brought under Rule 41(a)(2). *See Credit Suisse*, 117 F.4th at 161.

Vanderlan's core argument is that the district court erred because he believes his claims have merit. The purpose, however, of a *qui tam* action is to "vindicate the [g]overnment's interests." *Polansky*, 599 U.S. at 438. The government needed only to show that continued litigation would not do so. It did. The government explained that further litigation would interfere with the OIG's efforts to resolve its claims against Jackson HMA for civil

No. 24-60215

monetary penalties. Vanderlan, meanwhile, sought to enjoin any alternative administrative resolution between the government and Jackson HMA. And Jackson HMA refused to resolve the EMTALA investigation while facing potential FCA treble damages and civil penalties. This more than justifies the government's decision to dismiss. Because of these reasons, we hold that the district court did not err in granting the government's § 3730(c)(2)(A) motion.

## D.

We last consider whether the district court applied the proper standard—dismissal under § 3730(c)(2)(A) rather than settlement under § 3730(c)(2)(B). Vanderlan asserts that he is entitled to a fairness hearing under § 3730(c)(2)(B) but concedes that "there is no language in the FCA that appears to guarantee these legal rights in a [g]overnment settlement that occurs after the FCA case is dismissed."

"When interpreting a statute, we start with the text." *Lackey v. Stinnie*, 145 S. Ct. 659, 666 (2025). If it is unambiguous, we apply it as written. *See Asadi v. G.E. Energy (USA), LLC*, 720 F.3d 620, 622 (5th Cir. 2013). We also "give effect, if possible, to every word and every provision Congress used." *Id.* If the statute is unambiguous, our inquiry starts and ends there. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018). Article III does not license federal courts to "rewrite the language enacted by [Congress]." *United States v. Monsanto*, 491 U.S. 600, 611 (1989).

The provision at issue here, § 3730(c)(2)(B), declares that:

> The [g]overnment may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. Upon a showing of good cause, such hearing may be held in camera.

No. 24-60215

Section 3730(c)(2)(B) then establishes two conditions for its operation: (1) the government must propose a settlement for court approval, and (2) the relator must object. If neither occurs, § 3730(c)(2)(B) does not apply. *See United States ex rel. Schweizer v. Océ N.V.*, 677 F.3d 1228, 1234 (D.C. Cir. 2012) (holding that the provision applies only when "the government and the defendant agree to settle the case" and "the relator objects"); *see also United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 339–40 (4th Cir. 2017) (noting in dicta that the government may settle over a relator's objection "only if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable" (internal quotation marks omitted)).

All that said, Vanderlan forfeited this issue on appeal by failing to raise it adequately in his opening brief. *See Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023). To preserve an argument, an appellant "must address the district court's analysis and explain how it erred." *Id.* (quoting *SEC v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022)). Vanderlan did neither. He merely noted that he raised the argument below and suggested that the district court's rejection of it "raises an interesting point." That is not enough. Because he failed to engage with the issue, we hold that he forfeited any argument that the district court should have applied the § 3730(c)(2)(B) standard. *See id.* Thus, we do not address the issue.

## IV.

For the aforementioned reasons, we AFFIRM the district court's judgment.